IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAMES R. ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-1680-MN |
| | ) | |
| THE HON. JOHN CARNEY, | ) | |
| Governor of the State of Delaware, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>DEFENDANT'S OPENING BRIEF IN SUPPORT OF HIS MOTION TO DISMISS</u>**

*Of Counsel*:

WILSON SONSINI GOODRICH
& ROSATI, PC

Randy J. Holland
222 Delaware Avenue, Suite 800
Wilmington, DE 19801
(302) 304-7600

Michael W. McConnell
G. Edward Powell III
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300

Steffen N. Johnson
1700 K Street, N.W.
Washington, DC 20006
(202) 973-8800

Brian J. Levy
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
(212) 999-5800


Dated: March 18, 2021

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

David C. McBride (No. 408)
Martin S. Lessner (No. 3109)
Pilar G. Kraman (No. 5199)
Beth A. Swadley (No. 6331)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
dmcbride@ycst.com
mlessner@ycst.com
pkraman@ycst.com
bswadley@ycst.com

*Attorneys for Defendant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................................... ii

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ..................................................... 1

II.   NATURE AND STAGE OF THE PROCEEDINGS AND STATEMENT OF FACTS ....... 5

    A.   Facts Found by the Supreme Court...................................................................................... 5

    B.   Adams I, Plaintiff's Applications for Judicial Positions, and Real Estate Business........... 6

    C.   Adams II................................................................................................................................ 11

III.  ARGUMENT........................................................................................................................ 13

    A.   Plaintiff Lacks Standing to Challenge the Article IV Provisions of the Delaware
    Constitution ........................................................................................................................... 13

    B.   Plaintiff's Applications for Judicial Positions Do Not Create Standing to Challenge
    Article IV Because It Did Not Injure Plaintiff .................................................................... 14

    C.   Plaintiff Does Not Allege Any Concrete and Imminent Intent to Apply for a Judicial
    Position from Which He Is Barred by the Major Party Component ...................................... 14

        1.   Issue Preclusion Binds Plaintiff to the Determinations Made by the Supreme Court in
            Adams I and Prevents Plaintiff from Asserting Standing Based on Events That
            Occurred During the Pendency of the First Action ...................................................... 16

            a.   The Supreme Court's Factual Findings .................................................................. 16

            b.   The Superior Court Application in 2017 During the Pendency of Adams I............. 17

        2.   The Allegations of the Amended Complaint Fail to Establish Standing Based upon the
            Criteria and Analysis of the Supreme Court in Adams I.............................................. 17

        3.   The Amended Complaint Demonstrates the Danger of Relying upon General
            Statements of Intent Which May Subsequently Be Proven Inaccurate........................ 18

        4.   The Fact that Plaintiff Applied for a Superior Court Judgeship More than Three Years
            Ago Does Not Establish He Is Now Ready and Able to Serve .................................... 19

IV.   CONCLUSION..................................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Adarand Constructors, Inc. v. Pena*,
    515 U.S. 200 (1995).................................................................................................15

*Allen v. Wright*,
    468 U.S. 737 (1984).................................................................................................14

*Berger v. Cushman & Wakefield of Pa., Inc.*,
    C.A. No. 13-5195, 2017 WL 3582229 (E.D. Pa. Aug. 18, 2017)...........................16

*Carney v. Adams*,
    141 S. Ct. 493 (2020)....................................................................................... *passim*

*Clapper v. Amnesty International*,
    568 U.S. 398 (2013).................................................................................................15

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)...................................................................................................19

*Cutler v. Hayes*,
    818 F.2d 879 (D.C. Cir. 1987).................................................................................16

*Dozier v. Ford Motor Co.*,
    702 F.2d 1189 (D.C. Cir. 1983)...............................................................................17

*Finstad v. Beresford Bancorporation, Inc.*,
    831 F.3d 1009 (8th Cir 2016)..................................................................................16

*Fulani v. Bentsen*,
    862 F. Supp. 1140 (S.D.N.Y. 1994).........................................................................16

*Gratz v. Bollinger*,
    539 U.S. 244 (2003).................................................................................................15

*Gregory v. Ashcroft*,
    501 U.S. 452 (1991).................................................................................................14

*Hollander v. Members of The Bd. of Regents of the Univ. of the State of N.Y.*,
    C.A. No. 10-9277-LTS-HBP, 2011 WL 5222912 (S.D.N.Y. Oct. 31, 2011).........16

*L.T. Assocs., LLC v. Sussex Cty. Council*,
    C.A. No. 11-774-MPT, 2013 WL 3998462 (D. Del. Aug. 5, 2013)..........................9

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)......................................................................................14, 15, 19

*Magnus Elecs., Inc. v. La Republica Arg.*,
    830 F.2d 1396 (7th Cir. 1987) ........................................................................................17

*Ne. Fla. Chapter, Associated Gen. Contractors of Am. v. Jacksonville*,
    508 U.S. 656 (1993)........................................................................................................15

*Orlando Residence, Ltd. v. GP Credit Co., LLC*,
    553 F.3d 550 (7th Cir. 2009) ........................................................................................16

*Park Lake Res., LLC v. U.S. Dep't of Agric.*,
    378 F.3d 1133 (10th Cir. 2004) ....................................................................................17

*United States v. Hays*,
    515 U.S. 737 (1995).......................................................................................................13

*United States v. Moser*,
    266 U.S. 236 (1924).......................................................................................................16

**Constitutions**

Del. Const. art. IV, § 3 ........................................................................................... *passim*

**Other Authorities**

13A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* §
    3531.6 (3d ed. 2020) .....................................................................................................14

*Restatement (Second) of Judgments* § 27 (1982) .........................................................16

I.  **INTRODUCTION AND SUMMARY OF ARGUMENT**

Article IV, Section 3, of the Delaware Constitution governs nominations to five of Delaware's courts (the "Article IV Provisions").  The Article IV Provisions contain two components: (1) the "major party" component, which requires all nominees to the Supreme Court, Court of Chancery, and Superior Court be members of one of the two major political parties; and (2) the "bare majority" component, which precludes a nomination that would cause any party to have more than a bare majority on certain of the courts and combinations of courts.  Plaintiff's Amended Complaint is his fourth attempt to establish standing to challenge these Article IV Provisions.[1]

The Amended Complaint now explicitly acknowledges that Plaintiff has never been injured by the bare majority component and that he lacks standing to challenge that component.  D.I. 15 at ¶ 30 n.3.  The Amended Complaint also implicitly acknowledges that Plaintiff's application to the Superior Court in 2017 did not result in any injury caused by the Article IV Provisions.  That allegation still fails to allege that he was denied the nomination because of Article IV, even after the initial complaint was challenged on this basis, and the allegation about the Superior Court application in 2017 is now reduced to a footnote.  *Id.* at ¶ 11 n.1.  As a result, Plaintiff does not— and cannot—allege that his prior judicial applications resulted in an injury to him caused by the Article IV Provisions.  As such, the only real issue now is whether Plaintiff's allegations of *future* intentions add sufficient facts to alter the United States Supreme Court's judgment that he failed to establish any concrete and imminent injury.  *See Carney v. Adams*, 141 S. Ct. 493, 501 (2020) ("*Adams I*," which refers to the prior litigation involving Plaintiff's first lawsuit).

---

[1] The first and second attempts were in Plaintiff's first litigation, which the United States Supreme Court dismissed.  The third attempt was the initial complaint filed in this action, which Defendant moved to dismiss for lack of standing.  D.I. 12.  Rather than defend the initial complaint, Plaintiff filed, as a matter of right, his Amended Complaint.  D.I. 15.

With respect to this issue, the Amended Complaint adds allegations attempting to explain why Plaintiff did not apply for any number of judicial positions in 2019, after the Court of Appeals for the Third Circuit (temporarily) struck down the Article IV Provisions about which he complains. D.I. 15 at ¶¶ 12, 15. Plaintiff's explanation—that he was too busy with his real estate investment business—simply confirms that the Article IV Provisions did not prevent him from applying for those judicial positions (despite his professions to the contrary in *Adams I*). *Id*. In addition, the Amended Complaint now establishes that—despite earlier allegations to the contrary—Plaintiff does not plan to apply for a position on the Delaware Supreme Court or the Court of Chancery for a variety of reasons that have nothing to do with the Article IV Provisions. *Id.* at ¶ 14. He also alleges that there are several conditions that must be met before he would apply for a position on the Superior Court. *Id.*

The criteria for measuring Plaintiff's standing were established by the United States Supreme Court when it held that Plaintiff lacked standing because he was not "ready and able" to apply for a judicial position. *Carney*, 141 S. Ct. at 501. To be "ready and able," Plaintiff must establish a "concrete" plan to apply for a position, his application must be imminent, and it must be at least probable that such an application would be made but for the allegedly unconstitutional requirements. Applying those criteria to the Amended Complaint leads to the same conclusion the Supreme Court reached in *Adams I*: Adams has no Article III standing.

The Supreme Court explained that the context of how Mr. Adams became the plaintiff in that litigation was relevant to the standing issue and concluded it "suggests an abstract, generalized grievance, not an actual desire to become a judge." *Id.* The Supreme Court recounted that: (1) Plaintiff never applied for a judgeship from 2012 to 2016 when he met the Article IV qualifications for 14 openings, (2) he had been retired from the practice of law for over a year before he filed this

lawsuit, (3) he read a law review article questioning the constitutionality of the Article IV Provisions, and (4) within a month, he came out of retirement, changed his voting registration from Democratic to unaffiliated, and filed suit eight days later claiming he wanted to be a judge but could not because of his recently changed voter registration.  *Id.* at 500–01.  Those factual determinations are binding in this action and that history remains relevant.  In fact, Plaintiff's lack of genuine interest in being a judge is only further evidenced by Plaintiff's failure to apply for judicial positions in 2019, his newly articulated intent not to apply for certain judicial positions and the newly articulated preconditions to an application.  D.I. 15 at ¶¶ 12–15.

The Supreme Court also considered Plaintiff's testimony that "he wants to be, and would apply to be, a judge on any of Delaware's five courts."  *Carney*, 141 S. Ct. at 500.  The Supreme Court found this purported intention insufficient to establish standing, both because of the context and the lack of any concrete detail or imminence.  The context and lack of detail remain the same.  In fact, Plaintiff's purported intent now is even narrower and more conditional than that considered by the Supreme Court in *Adams I.*  He now states that he will not apply to two of the three courts subject to the major party component—the Court of Chancery and Supreme Court—and would apply to the remaining court only if certain conditions are met.  In *Adams I*, the Supreme Court held that Plaintiff could not establish standing because he merely purported an intent to apply "someday" for a judicial position.  The new intent articulated in the Amended Complaint is not even a "someday" intent; rather, it is a "some year" intent, but only maybe, if certain conditions are met.

The Supreme Court in *Adams I* also examined whether Plaintiff had established that his plan for a judicial position was concrete and his application was imminent.  The Court concluded that "[Adams] has failed to show that 'personal,' 'concrete,' and 'imminent' injury upon which

our standing precedents insist." *Carney*, 141 S. Ct. at 503.  In reaching this conclusion, the Supreme Court noted the absence of supportive detail:

> First, as we have just laid out, Adams' words "I would apply . . ." stand alone without any actual past injury, without reference to an anticipated timeframe, without prior judgeship applications, without prior relevant conversations, without efforts to determine likely openings, without other preparations or investigations, and without any other supporting evidence.

*Id.* at 501.  The allegations of the Amended Complaint are similarly devoid of supportive, concrete facts about Plaintiff's intentions.  Plaintiff now admits that he did not suffer any past injury caused by the Article IV Provisions.  Nor does Plaintiff allege an anticipated timeframe for when he may apply for a judgeship, any efforts to determine likely openings, or even any anticipated positions for which he will apply.

The only new supportive fact alleged is he applied for a judicial position on the Superior Court *more than three years ago*.  As explained below, however, the doctrine of issue preclusion prevents Plaintiff from now seeking to establish standing based upon an event that occurred during the pendency of *Adams I*.  But even if this application were considered for standing purposes, the allegation of a single, three-year-old application cannot carry Plaintiff's burden to allege standing when the Amended Complaint also demonstrates more recent failures to apply for any subsequent positions on the Superior Court despite the fact that the Article IV Provisions were no longer an obstacle for Plaintiff and open positions satisfied Plaintiff's newly articulated preconditions.

In *Adams I*, the Supreme Court stated that "Adams must *at least* show that he is *likely* to apply to become a judge in the reasonably foreseeable future *if Delaware did not bar him because of political affiliation*."  *Carney*, 141 S. Ct. at 499–500 (emphasis added).  All the Amended Complaint establishes is that Plaintiff could have applied for numerous judicial positions when the Article IV Provisions provided no obstacle but he did not because he was too busy with his real estate business after retiring from the law.  It is evident that Plaintiff would not apply for a position

if the Article IV Provisions are invalidated because he failed to apply when he had the opportunity to do so.  Plaintiff's fourth attempt to establish standing fails, and this action should be dismissed.

## II.   NATURE AND STAGE OF THE PROCEEDINGS AND STATEMENT OF FACTS

### A.   *Facts Found by the Supreme Court*

The Supreme Court in *Adams I* made certain findings based on an uncontroverted record concerning how Mr. Adams became the plaintiff in that action and about his motivation for filing that lawsuit.  These Supreme Court's findings are binding on Plaintiff here:

> First, the record showed that, between 2012 and 2016, during which time Adams was a practicing lawyer and a registered Democrat, Delaware's five courts had a combined total of 14 openings for which Adams, then a Democrat, would have been eligible.  Yet he did not apply for any of them.
>
> Second, on December 31, 2015, after roughly 12 years as a lawyer for the Delaware Department of Justice, Adams retired.  In February 2016, Adams changed his bar membership from "Active" to "Emeritus" status.  He then returned to "Active" status in January 2017.  In his deposition, he stated that at about that same time in the "[b]eginning of the year, January/February," he read a law review article arguing that Delaware's judicial eligibility requirements were unconstitutional because they excluded independents.
>
> Third, shortly thereafter, on February 13, 2017, Adams changed his political affiliation from Democrat to unaffiliated independent.  Before that, he had been a Democrat his "whole life" and actively involved in the Delaware Democratic Party. Leaving the party made it less likely that he would become a judge.  But doing so made it possible for him to vindicate his view of the law as set forth in the article.
>
> Fourth, after Adams became a political independent on February 13, 2017, he filed this lawsuit eight days later on February 21.
>
> Fifth, Adams said in his answer to interrogatories that he "has no knowledge of what judicial positions may become open in the next year."
>
> Sixth, other than the act of filing the lawsuit itself, the summary judgment record contains no evidence of conversations or other actions taken by Adams suggesting that he was "able and ready" to apply for a judgeship.

*Carney*, 141 S. Ct. at 500–01 (citations omitted).  Based upon these facts, the Supreme Court concluded that:

the context offers Adams no support.  It suggests an abstract, generalized grievance, not an actual desire to become a judge.  Indeed, Adams' failure to apply previously when he was eligible, his reading of the law review article, his change of party affiliation, and his swift subsequent filing of the complaint show a desire to vindicate his view of the law, as articulated in the article he read.

*Id.* at 501.

### B.    Adams I*, Plaintiff's Applications for Judicial Positions, and Real Estate Business*

Shortly after coming out of retirement and changing his party registration, Plaintiff filed his first action on February 21, 2017 and then filed an amended complaint on April 10, 2017 to address Defendant's argument that he lacked standing to sue.  *Adams v. Carney*, C.A. No. 17-181-MPT, D.I. 1 and 10.  The parties cross-moved for summary judgment on September 29, 2017.  *Id.* at D.I. 28 and 31.  Plaintiff now alleges that sometime in 2017 "he started a single member LLC in order to buy a small investment lot in West Virginia."  D.I. 15 at ¶ 15.  In *Adams I*, however, Plaintiff made no mention of his real estate business.  *See, e.g.*, *Adams v. Carney*, C.A. No. 17-181-MPT, D.I. 30 at A-47–A-50.  Other than coming out of retirement to supposedly return to the practice of law in 2017, Plaintiff testified in *Adams I* that he was not looking for any other "opportunities."  *Id.* at A-5–A-7.  In his answering brief in opposition to Defendant's summary judgment brief filed on October 13, 2017, Plaintiff reiterated his testimony that "he 'really wanted' to become a judge; . . . that he has not sought other opportunities to focus on a judgeship; [and] that he would apply for any judicial position for which he feels qualifie[d]."  *Adams v. Carney*, C.A. No. 17-181-MPT, D.I. 35 at 3 (citations omitted).  Again, Plaintiff failed to mention the real estate investment business he had started.

On December 6, 2017, the district court issued its first opinion granting summary judgment to Plaintiff.  *Adams v. Carney*, C.A. No. 17-181-MPT, 2017 WL 6033650, at *6 (D. Del. Dec. 6, 2017) (the "December 6 Opinion").  The Court held Plaintiff had standing to challenge the major

party component because "Plaintiff alleged that if he were permitted to apply as an independent, he would apply for a position on either the Delaware Superior Courts or the Delaware Supreme Court." *Id.* at *4 (D. Del. Dec. 6, 2017), opinion clarified, *Adams v. Carney*, C.A. No. 17-181-MPT, 2018 WL 2411219 (D. Del. May 23, 2018). By contrast, Plaintiff now alleges that he would *not* apply for a position on the Supreme Court. D.I. 15 at ¶ 14.

On December 20, 2017, Defendant filed a motion for clarification of the December 6 Opinion. *Adams v. Carney*, C.A. No. 17-181-MPT, D.I. 42. On February 21, 2018, Plaintiff filed a motion to hold Defendant in contempt of court, arguing that a notice for a judicial vacancy for which Plaintiff had *not* applied, was not consistent with his interpretation of the December 6 Opinion. *Id.* at D.I. 57. However, as Defendant explained, Plaintiff's 2017 Superior Court application was considered on the merits. *See id.* at D.I. 58 at 5, Ex. A.

Plaintiff now alleges that in 2018 and 2019 his real estate activities "greatly expanded." D.I. 15 at ¶ 15.

> The LLC bought, rehabbed and sold a condominium in Ocean City, Md., purchased and rehabbed a townhouse in Ocean City, Md., bought rehabbed and sold a house in Sassafras, Md., bought rehabbed and sold a house in Still Pond, Md., sold the lot in West Virginia, bought another lot in West Virginia, bought and rehabbed a cabin in West Virginia, and bought a historic church in NY.

*Id.* Plaintiff does not allege any specific dates for these events, nor does Plaintiff allege any facts regarding the current status of these remaining investments or his business.

On May 23, 2018, the district court denied Plaintiff's motion to hold Defendant in contempt. *Adams v. Carney*, C.A. No. 17-181-MPT (D. Del. May 23, 2018) (Memo Order) (D.I. 60). The same day, the court also issued an opinion clarifying the December 6 Opinion (collectively, the "May 23 Opinions"). *Adams v. Carney*, C.A. No. 17-181-MPT, 2018 WL 2411219 (D. Del. May 23, 2018). The court again concluded Plaintiff had standing to challenge

the major party component because "Plaintiff alleges . . . he would apply for a position on either the Delaware Superior Courts or the Delaware Supreme Court." *Id.* at *4.

On June 1, 2018, Defendant moved for a stay of the December 6 and May 23 Opinions. *Adams v. Carney*, C.A. No. 17-181-MPT, D.I. 63.   On June 25, 2018, the court granted the requested stay pending the appeal to the Third Circuit and in doing so noted that Plaintiff's prior judicial applications had been considered on the merits.  *Adams v. Carney*, C.A. No. 17-181-MPT, 2018 WL 3105113, at *6 (D. Del. June 25, 2018); *see also* D.I. 15 at ¶ 11.

Defendant appealed to the Third Circuit.  In Plaintiff's answering brief, filed on August 15, 2018—during the first year of his "greatly expanded" real estate investments—Plaintiff stated "Adams seeks a judicial appointment, but the Political Balance Requirement denies him such opportunities, both as to recent judicial openings and as to opportunities that may arise in the future."  Brief for Appellee at 9, *Adams v. Carney*, No. 18-1045 (3d Cir. Aug. 15, 2018).  He further stated that "he 'really wanted' to become a judge; . . . that he has not sought other opportunities since he retired from the Delaware Department of Justice so he could focus on a judgeship; [and] that he would apply for any judicial position for which he feels qualified . . . ." *Id.* at 8.  Plaintiff affirmatively represented he had not sought other legal employment—suggesting that he was available for a judicial position—but never mentioned his greatly expanding real estate business.

On February 5, 2019, the Third Circuit issued an opinion affirming-in-part and reversing-in-part.  *Adams v. Governor of Delaware*, 914 F.3d 827 (3d Cir. 2019).  The Third Circuit revised that opinion *sua sponte* on February 13, 2019, *Adams v. Governor of Delaware*, No. 18-1045 (3d Cir. Feb. 13, 2019) (Order and Op.), and then vacated the opinion after the Third Circuit granted the Governor's first petition for rehearing.  *Adams v. Governor of Delaware*, No. 18-1045 (3d Cir.

8

Apr. 10, 2019) (Order).  The Third Circuit issued a new opinion on April 10, 2019 (the "Third Circuit Opinion").  *Adams v. Carney*, 922 F.3d 166 (3d Cir. 2019).  Defendant did not seek a stay of the Third Circuit Opinion.  D.I. 15 at ¶ 12.

After the Third Circuit's ruling became final and before the United States Supreme Court reversed that ruling, the Delaware Judicial Nominating Commission did not apply the Article IV Provisions to any of the judicial vacancies on the Supreme Court, Court of Chancery, or Superior Court.  *Id.* at ¶ 10.  Plaintiff, therefore, obtained the relief he claimed to need before applying for positions on these courts.  There were a number of vacancies on these courts during that period— yet Plaintiff did not apply for any of them.  Indeed, two positions opened on the Superior Court during 2019 that even met all of Plaintiff's newly expressed preconditions for a Superior Court application—the vacancies were in New Castle County and a sitting judge was not seeking reappointment—yet Plaintiff did not apply for either of those positions.  *Id.* at ¶ 15.  Specifically, in 2019, the following four vacancies arose:

1.  A vacancy on the Superior Court of New Castle County for the seat held by Judge John A. Parkins, who had retired.  The vacancy was noticed on April 25, 2019, and the deadline for applications was May 10, 2019.  Declaration of David C McBride ("McBride Decl.") Ex. 1. [2]  This vacancy met Plaintiff's newly expressed conditions for a Superior Court application, but he did not apply for it.

---

[2] The Court can and should consider the documents included with the McBride Declaration without converting the motion to dismiss into one for summary judgment as the exhibits are all a matter of public record and are integral to Plaintiff's claims.  *See, e.g.*, *L.T. Assocs., LLC v. Sussex Cty. Council*, C.A. No. 11-774-MPT, 2013 WL 3998462, at * 3 (D. Del. Aug. 5, 2013) (quotations and citations omitted) (explaining that a court is not limited to the four corners of the complaint when a motion to dismiss raises issues integral to the complaint's allegations or are part of the public record).

2.  A vacancy on the Delaware Supreme Court for the seat held by Chief Justice Leo E. Strine, who had retired, and for a potential derivative vacancy for Justice if, as happened, the position of Chief Justice was filled by a sitting member of that Court.  The vacancy was noticed on August 22, 2019, and the deadline for applications was September 13, 2019.  *Id.* at Ex. 2.

3.  A vacancy on the Superior Court of New Castle County for the seat held by Resident Judge Richard R. Cooch, who was retiring.  The vacancy was noticed November 1, 2019, and the deadline for applications was December 2, 2019.  *Id.* at Ex. 3.  This vacancy met Plaintiff's newly expressed conditions for an application, but the he did not apply for it.

4.  A vacancy on the Court of Chancery in New Castle County for the seat held by Vice Chancellor Tamika Montgomery-Reeves, who had been elevated to the Delaware Supreme Court. The vacancy was noticed on November 8, 2019, and the deadline for applications was December 2, 2019.  *Id.* at Ex. 4.

In 2020, there were two more openings on the Superior Court, but Plaintiff did not seek appointment for those positions either.  *Id.* at Exs. 5, 6.  Plaintiff did apply for positions on the Court of Common Pleas in 2018 and 2020.  D.I. 15 at ¶¶ 11 n.1, 16.  On January 19, 2021, a judicial vacancy was announced in the Court of Common Pleas; Plaintiff has applied for that position and is waiting to hear about it.  *Id.* at ¶ 18.

Defendant filed a petition for certiorari with the Unites States Supreme Court on September 4, 2019.  Petition for Writ of Certiorari, *Carney v. Adams*, 141 S. Ct. 493 (2020) (No. 19-309). The appeal was accepted by that Court on December 6, 2019.  *Carney v. Adams*, 140 S. Ct. 602 (2019).  The matter was argued before the Supreme Court on October 5, 2020.  Oral Argument, *Carney v. Adams*, 141 S. Ct. 493 (2020) (No. 19-309).  In his answering brief before the Supreme Court filed on February 20, 2020, Plaintiff argued that "he would, in fact, apply for judgeships but

for the political discrimination." Brief for Respondent at 8, *Carney v. Adams*, 141 S. Ct. 493 (No. 19-309). He clarified that he "did not state that he would merely 'consider applying.' He said affirmatively that he 'would consider *and apply for'* any judicial position for which he feels he is qualified, which includes any judicial officer position." *Id.* at 16 (emphasis in original). Despite these arguments to the United States Supreme Court, Plaintiff now alleges that he was not able to apply for judicial positions in the year before this brief was filed because of his real estate investment business. D.I. 15 at ¶ 15.

On December 10, 2020, the Supreme Court reversed the Third Circuit and held that Plaintiff lacked standing to challenge the Article IV Provisions. *Carney*, 141 S. Ct. at 500.

### C.     *Adams II*

On the same day the Supreme Court issued its decision, Plaintiff filed this new action, which is effectively a continuation of *Adams I*. Defendant moved to dismiss the initial complaint for lack of standing, arguing that Plaintiff did not allege or suffer any injury caused by the Article IV Provisions in connection with his past applications to the Court of Common Pleas[3] and his single application in 2017 to the Superior Court.[4] D.I. 13. In addition, Defendant demonstrated

---

[3] The Article IV Provisions did not cause injury to Plaintiff in connection with his applications to the Court of Common Pleas because the bare majority component—the only component applicable to that Court—did not preclude Plaintiff's nomination as an unaffiliated voter. *See, e.g.*, D.I. 13 at 3, 14–15; *see also* D.I. 15 at ¶ 30 n.3.

[4] Plaintiff alleged in the original complaint that he was not nominated to the Superior Court, but he did not allege that his nomination was precluded by the Article IV Provisions. Rather, Plaintiff does not contest that the Article IV Provisions were not applied to his or any other application for this opening and does not allege that the Article IV Provisions caused any injury. D.I. 15 at ¶ 30 n.3.

that Plaintiff had not alleged any concrete and imminent plan to apply for a judicial position. *Id.* In response to the motion to dismiss, Plaintiff filed his Amended Complaint. D.I. 15.

In the Amended Complaint, Plaintiff alleges that "Adams has applied for, and been rejected for, several judicial positions, and is ready and able to do so again if the opportunity arises." *Id.* at ¶ 6. Although Plaintiff makes the conclusory allegation that he is ready and able to apply for judicial positions "if the opportunity arises again," the subsequent allegations in the Amended Complaint prove otherwise. For example, the Amended Complaint avers that Plaintiff does not plan to apply for any position on the Supreme Court and Court of Chancery and that he would only apply to the Superior Court if certain conditions are met. *Id.* at ¶ 14.

In the Amended Complaint, Plaintiff set a number of conditions to any future application to the Superior Court:

> Adams set a plan for applying for judgeships. First, he would not apply for any judgeship where a sitting judge was seeking reappointment, as in Delaware it is extremely rare that a judge seeking reappointment is denied same. Second, he deferred seeking a judgeship in either the Supreme Court or the Court of Chancery because, even though he believed he was qualified for those positions, Adams concluded that he would not realistically be considered. Instead, he would focus on the Superior Court and the Court of Common Pleas. He also declined to apply for two Superior Court opening[s] that arose outside of New Castle County, where Adams resides, as traditionally Delaware state judges are chosen from the same county in which they reside, and Adams did not intend to relocate.

*Id*. However, even when those conditions were met in 2019, he did not apply. *Supra* at 9–10.

Plaintiff also acknowledges that there were openings on the Delaware Supreme Court, the Court of Chancery, and the Superior Court in 2019 for which he could have applied while the Article IV Provisions were held invalid. However, Plaintiff did not apply:

> Two Superior Court judgeship[s] in New Castle County became available after the decision of the Third Circuit's ruling, in April and November, 2019. The timing, however, was bad for Adams. In 2017, he started a single member LLC in order to buy a small investment lot in West Virginia. In 2018 and 2019 this small effort greatly expanded. The LLC bought, rehabbed and sold a condominium in Ocean City, Md., purchased and rehabbed a townhouse in Ocean City, Md., bought

> rehabbed and sold a house in Sassafras, Md., bought rehabbed and sold a house in
> Still Pond, Md., sold the lot in West Virginia, bought another lot in West Virginia,
> bought and rehabbed a cabin in West Virginia, and bought a historic church in NY.
> As Adams was very tied up with the LLC during that time he had to pass on those
> judgeships.  As things settled down he began applying again in 2020 and 2021.

*Id.* at ¶ 15.  Again, these two Superior Court positions in 2019 for which Plaintiff did *not* apply

met his preconditions.

Plaintiff alleges he applied for one position on the Superior Court in 2017, *id.* at ¶ 11 n.1,

and three positions on the Court of Common Pleas in 2018, 2020 and, most recently, sometime

after January 19, 2021, *id.* at ¶¶ 11 n.1, 18.  These allegations demonstrate that Plaintiff's focus

now is on the Court of Common Pleas.  While Plaintiff has applied for three positions on the Court

of Common Pleas in the past three years, he has not submitted a single application to any other

court during that period.  As Plaintiff now expressly admits, his applications for the Court of

Common Pleas are not precluded by the Article IV Provisions.  D.I. 15 at ¶ 30 n.3.

## III.   ARGUMENT

### A.    Plaintiff Lacks Standing to Challenge the Article IV Provisions of the Delaware Constitution

> It is by now well settled that 'the irreducible constitutional minimum of standing
> contains three elements.  First, the plaintiff must have suffered an 'injury in fact'—
> an invasion of a legally protected interest that is (a) concrete and particularized, and
> (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a
> causal connection between the injury and the conduct complained of. . . .  Third, it
> must be likely, as opposed to merely speculative, that the injury will be redressed
> by a favorable decision. . . .  We have also made clear that it is the burden of the
> party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts
> demonstrating that he is a proper party to invoke judicial resolution of the dispute.

*United States v. Hays*, 515 U.S. 737, 742–43 (1995) (quotations and citations omitted).  This is

the same standard applied by the Supreme Court in *Adams I.  Carney*, 141 S. Ct. at 498–99.

Standing is not a technicality.  Rather, it is an essential limitation on the judicial branch

that is critical for the maintenance of the separation of powers established by the United States

13

Constitution.  *See, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992).  Standing issues

"must be answered by reference to the Article III notion that federal courts may exercise power

only 'in the last resort, and as a necessity.'"  *Allen v. Wright*, 468 U.S. 737, 752 (1984), *abrogated*

*on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

"Just as separation-of-powers concerns may justify a denial of standing, so may concerns of

federalism."  13A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* §

3531.6 (3d ed. 2020).  Those federalism concerns are especially appropriate in this case, where the

right of a state to structure its own judiciary is at issue.  *Gregory v. Ashcroft*, 501 U.S. 452, 460,

463 (1991).

**B.**     **Plaintiff's Applications for Judicial Positions Do Not Create Standing to Challenge Article IV Because It Did Not Injure Plaintiff**

Defendant argued in his prior motion to dismiss that Plaintiff's initial complaint failed to

allege the critical elements of injury-in-fact and causation with respect to any of his judicial

applications.  D.I. 13 at 14–15.  In his Amended Complaint, Plaintiff explicitly concedes the lack

of injury with respect to the Court of Common Pleas, D.I. 15 at ¶ 30 n.3, and he implicitly concedes

the same with respect to his 2017 Superior Court application, as to which Plaintiff still does not

allege causation and which was considered on the merits.  *Id.* at ¶ 11 n.1.  Thus, the Amended

Complaint fails to allege that Plaintiff has been injured by the Article IV Provisions.

The only remaining question is whether the Article IV Provisions cause injury to Plaintiff

because he has a concrete and imminent plan to apply for a judicial position for which he would

be disqualified by the Article IV Provisions.

**C.**     **Plaintiff Does Not Allege Any Concrete and Imminent Intent to Apply for a Judicial Position from Which He Is Barred by the Major Party Component**

As the United States Supreme Court already held, Plaintiff must allege facts demonstrating

an imminent and concrete intent to apply for a judicial position from which he is excluded by the

major party component in order to have standing to challenge that component. *Carney*, 141 S. Ct. at 501.

In *Adams I*, the Supreme Court held:

[Adams] claims that Delaware's major party requirement in fact prevents him, a political independent, from having his judicial application considered for three of Delaware's courts. To prove this kind of harm, however, Adams must *at least* show that he is *likely* to apply to become a judge in the reasonably foreseeable future *if Delaware did not bar him because of political affiliation.*

*Id.* at 499–500 (emphasis added).[5] To show "reasonably foreseeable future," Plaintiff must show "that he was "able and ready" to apply for a vacancy in the *reasonably imminent future*." *Id.* at 501–02. Plaintiff did not, and, "[c]onsequently, [] failed to show that 'personal,' 'concrete,' and '*imminent*' injury upon which our standing precedents insist." *Id.* at 503 (emphasis added).

Conversely, the Supreme Court also stated that an expressed intent to "someday" apply for a judicial position is not sufficient to establish standing, citing its prior decision in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992). *Carney*, 141 S. Ct. at 502. The precedent cited by the Supreme Court in *Adams I* further makes clear that standing requires both a concrete plan and an imminent application. *See e.g.*, *Gratz v. Bollinger*, 539 U.S. 244, 262, (2003); *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211–12 (1995); *Ne. Fla. Chapter, Associated Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656, 666, 668 (1993). In these cases, there was evidence of multiple or recent past applications and of a concrete and imminent injury.

When measured against the Supreme Court's criteria considered in *Adams I*, the Amended

---

[5] "[A]t least" "likely" means that "likely" may not be enough because in *Clapper v. Amnesty International*, the Court stated an injury must be "certainly impending," 568 U.S. 398, 414 (2013), while even the dissent articulated the test as "reasonable probability" and "high probability." *Id.* at 441 (Breyer, J. dissenting).

Complaint falls short even of the deficient record before the Supreme Court in *Adams I*.

      1.     *Issue Preclusion Binds Plaintiff to the Determinations Made by the Supreme Court in* Adams I *and Prevents Plaintiff from Asserting Standing Based on Events That Occurred During the Pendency of the First Action*

The doctrine of issue preclusion (or collateral estoppel) prevents a party from re-litigating in a new action legal and factual issues already decided by a court in an earlier action. *United States v. Moser*, 266 U.S. 236, 241 (1924); *Restatement (Second) of Judgments* § 27 (1982). A court's prior determination regarding standing is controlling in a subsequent action in the appropriate circumstances. *Orlando Residence, Ltd. v. GP Credit Co., LLC*, 553 F.3d 550, 556 (7th Cir. 2009) (collateral estoppel applies to standing); *Cutler v. Hayes*, 818 F.2d 879, 890 (D.C. Cir. 1987) (same); *Fulani v. Bentsen*, 862 F. Supp. 1140, 1147, 1150 (S.D.N.Y. 1994) (same). Moreover, the factual findings made in *Adams I* are binding upon the parties in a subsequent litigation between the same parties. *See, e.g.*, *Finstad v. Beresford Bancorporation, Inc.*, 831 F.3d 1009, 1015 (8th Cir 2016) (factual findings in an action dismissed for lack of standing are binding upon party in a subsequent action); *Berger v. Cushman & Wakefield of Pa., Inc.*, C.A. No. 13-5195, 2017 WL 3582229, at *11 (E.D. Pa. Aug. 18, 2017) (same); *Hollander v. Members of The Bd. of Regents of the Univ. of the State of N.Y.*, C.A. No. 10-9277-LTS-HBP, 2011 WL 5222912, at *2 (S.D.N.Y. Oct. 31, 2011), *aff'd*, 524 F. App'x 727 (2d Cir. 2013) (same).

      a.     *The Supreme Court's Factual Findings*

The factual determinations made by the Supreme Court in *Adams I*, based on an uncontroverted record, include the following: (1) facts concerning how Mr. Adams became a plaintiff in *Adams I*, (2) his motives for filing *Adams I*, and (3) that he was not able and ready to serve as a judge in February 2017 when he filed *Adams I*. *Carney*, 141 S. Ct. at 500-01; *see also supra* at 5–6. To establish standing, the Amended Complaint must allege facts to overcome these findings. Rather than overcome these findings, however, the Amended Complaint reinforces them

and demonstrates that the United States Supreme Court's determination that Plaintiff lacked standing was correct.

> b. *The Superior Court Application in 2017 During the Pendency of* Adams I

In *Adams I*, the United States Supreme Court ruled that Plaintiff lacked standing to challenge any of the Article IV Provisions. *Carney*, 141 S. Ct. at 501. Plaintiff is barred by the doctrine of issue preclusion from re-litigating the issue of standing based upon a judicial application that occurred during the pendency of *Adams I. Park Lake Res., LLC v. U.S. Dep't of Agric.*, 378 F.3d 1133, 1137 (10th Cir. 2004) (a change in circumstances that cures the jurisdictional defect of ripeness "must occur subsequent to the prior litigation"); *see also Dozier v. Ford Motor Co*., 702 F.2d 1189, 1192 n.4 (D.C. Cir. 1983) (Scalia, J.) ("[P]roper application of res judicata should require some demonstration that the plaintiff is relying upon a new fact or occurrence, and not merely relying upon those that existed at the time of the first dismissal."); *Magnus Elecs., Inc. v. La Republica Arg*., 830 F.2d 1396, 1401 (7th Cir. 1987) (following *Dozier*). Plaintiff should not be permitted to file sequential lawsuits and complaints attempting to create standing based upon facts known to the Plaintiff at the time of the first lawsuit.

> 2. *The Allegations of the Amended Complaint Fail to Establish Standing Based upon the Criteria and Analysis of the Supreme Court in* Adams I

Comparing the allegations in the Amended Complaint to the record before the United States Supreme Court in *Adams I* provides the necessary context for this action and demonstrates that the Amended Complaint fails to establish standing. The Supreme Court found Plaintiff's expressed desire to be a judge and intention to apply to a judicial vacancy insufficient to establish standing, both because of the context and the lack of any concrete detail or imminence. *Carney*, 141 S. Ct. at 500. Here, the context remains the same, and Plaintiff again failed to provide any supporting detail regarding his intention to apply for a judgeship. In fact, Plaintiff's expressed

intent in this action is narrower and more conditional than the intent expressed in *Adams I* because Plaintiff now contends that he would apply only to a position on the Superior Court if the opening is in New Castle County and a sitting judge is not seeking reappointment.  D.I. 15 at ¶ 14.  Even these allegations are undermined by publicly available facts: when there were openings on the Superior Court meeting Plaintiff's conditions in 2019, he still did not apply.

The Supreme Court in *Adams I* also examined whether Plaintiff had established that his plan for a judicial position was concrete and his application imminent.  In concluding that Plaintiff had not established a concrete and imminent plan to apply, the Supreme Court specified the type of detail necessary.  *Carney*, 141 S. Ct. at 501.  The allegations of the Amended Complaint are similarly devoid of supportive, concrete facts about Plaintiff's intentions.  In fact, Plaintiff now admits that he did not suffer any past injury caused by the Article IV Provisions, does not allege an anticipated timeframe for when he may apply for a judicial position, and he does not allege any efforts to identify any positions for which he would apply.

3.    *The Amended Complaint Demonstrates the Danger of Relying upon General Statements of Intent Which May Subsequently Be Proven Inaccurate*

During *Adams I*, Plaintiff repeatedly testified to and argued he had standing because he intended to apply for a judicial position but was prevented from doing so by the Article IV Provisions.  Until reversed by the United States Supreme Court, the District Court and the Third Circuit relied on Plaintiff's general expressions of intent to find standing.  *Supra* at 6–8.  Plaintiff's new allegations now lay bare that he was not ready and able to apply for a judicial position.  The Plaintiff's failure to apply for any positions in 2019 demonstrates that the Supreme Court was correct not to accept Plaintiff's general expressions of intent in *Adams I*.  In this action, Plaintiff continues to rely upon general expressions of intent, and those general expressions of intent are both insufficient under *Adams I* and contradicted by the narrower and more conditional intent

Adams pleaded.  It would be a mistake to accept the sufficiency of Plaintiff's continued expression of a general intent when such expressions proved to be inaccurate in *Adams I*.

4. *The Fact that Plaintiff Applied for a Superior Court Judgeship More than Three Years Ago Does Not Establish He Is Now Ready and Able to Serve*

The only supportive fact that Plaintiff now alleges is that over three years ago (in 2017) he applied for a judicial position on the Superior Court.  If this application were considered, notwithstanding collateral estoppel, it would still be insufficient in light of Plaintiff's more recent failure to apply for any subsequent position on the Superior Court.  The 2017 allegation also is insufficient because of Plaintiff's newly articulated preconditions and lack of any suggestion of concreteness and imminence.  As such, this three-year-old application, by itself, is not sufficient for Plaintiff to carry his burden of demonstrating that he is likely to apply for a Superior Court vacancy *imminently*.

The fact that a plaintiff applied in the past—or even sustained an injury in the past—is not determinative of whether standing exists in the present, especially where, as here, the relief sought is injunctive or declaratory.  *See, e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) (Plaintiff who suffered past injury lacked standing because he could not establish a substantial likelihood of future injury); *Lujan*, 504 U.S. at 564 (the fact that plaintiffs visited the affected area in the past "proves nothing" and their desire "someday" to return is insufficient for standing).

## IV.    <u>CONCLUSION</u>

It is axiomatic that the purpose of the standing requirement is to limit the courts to their appropriate sphere of operation.  That is, the federal judiciary can only resolve actual, concrete cases and controversies, and it only uses its judicial power when necessary to resolve such a case before it.  Federal courts do not exercise those powers to address generalized grievances—*i.e.*, when a person simply wants a change in the law.  This is exactly such a case.  Plaintiff seeks to

invalidate the Article IV Provisions, not because he has been or will be injured by those provisions, but because he disagrees with those provisions.  This case should be dismissed.

Dated:  March 18, 2021

*Of Counsel*:

WILSON SONSINI GOODRICH
   & ROSATI, PC

Randy J. Holland
222 Delaware Avenue, Suite 800
Wilmington, DE 19801
(302) 304-7600

Michael W. McConnell
G. Edward Powell III
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300

Steffen N. Johnson
1700 K Street, N.W.
Washington, DC 20006
(202) 973-8800

Brian J. Levy
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
(212) 999-5800

YOUNG CONAWAY STARGATT
   & TAYLOR, LLP

/s/ *David C. McBride*
David C. McBride (No. 408)
Martin S. Lessner (No. 3109)
Pilar G. Kraman (No. 5199)
Beth A. Swadley (No. 6331)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
dmcbride@ycst.com
mlessner@ycst.com
pkraman@ycst.com
bswadley@ycst.com

*Attorneys for Defendant*

20

## <u>CERTIFICATE OF SERVICE</u>

I, David C. McBride, hereby certify that on March 18, 2021, I caused to be electronically

filed a true and correct copy of the foregoing document with the Clerk of the Court using

CM/ECF, which will send notification that such filing is available for viewing and downloading

to the following counsel of record:

> David L. Finger, Esquire
> Finger & Slanina, LLC
> One Commerce Center
> 1201 N. Orange St., 7th Floor
> Wilmington, DE  19801
> *dfinger@delawgroup.com*
>
> *Attorneys for Plaintiff*

I further certify that on March 18, 2021**,** I caused the foregoing document to be served via

electronic mail upon the above-listed counsel.

Dated:  March 18, 2021

YOUNG CONAWAY STARGATT &
 TAYLOR, LLP

/s/  *David C. McBride*
David C. McBride (No. 408)
Martin S. Lessner (No. 3109)
Pilar G. Kraman (No. 5199)
Beth A. Swadley (No. 6331)
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
*dmcbride@ycst.com*
*mlessner@ycst.com*
*pkraman@ycst.com*
*bswadley@ycst.com*

*Attorneys for Defendant,*
*The Hon. John Carney*

27487840.1