IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAMES R. ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-1680-MN |
| | ) | |
| THE HON. JOHN CARNEY, | ) | |
| Governor of the State of Delaware, | ) | |
| | ) | |
| Defendant. | ) | |

**ANSWERING BRIEF IN OPPOSITION TO THE MOTION TO DISMISS OF
DEFENDANT THE HONORABLE JOHN CARNEY**

David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 N. Orange St., 7th fl.
Wilmington, DE  19801
(302) 573-2525
dfinger@delawgroup.com
Attorney for plaintiff James R. Adams

Dated: April 1, 2021

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

NATURE AND STAGE OF THE PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      THE PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      VENUE, SUBJECT MATTER JURISDICTION AND STANDING . . . . . . . . . . . . . . . 5

      BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

I.      ADAMS HAS ESTABLISHED STANDING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      A.      ISSUE PRECLUSION DOES NOT APPLY HERE BECAUSE THE CLAIM OF STANDING IS BASED ON FACTS OCCURRING AFTER THE AMENDED COMPLAINT IN *ADAMS I* WAS FILED . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      B.      ADAMS HAS PLEADED FACTS SHOWING THAT HE IS "ABLE AND READY" TO APPLY FOR A JUDGESHIP . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            1.      Adams Has Developed A Concrete Plan . . . . . . . . . . . . . . . . . . . . . . . . 12

            2.      Adams Applied for Judgeships . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      C.      THERE IS A SUBSTANTIAL RISK THAT THE HARM WILL OCCUR . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Carney*, 2017 WL 6033650 (D. Del. June 11, 2017) . . . . . . . . . . . . . . . . . . . . . . . . 2, 7

*Adams v. Carney*, 2018 WL 2411219 (D. Del. May 23, 2018) . . . . . . . . . . . . . . . . . . . . . . . . 2

*Adams v. Carney*, 2018 WL 3105113 (D. Del. June 25, 2018) . . . . . . . . . . . . . . . . . . . . . . . . 2

*Adams v. Governor of Delaware*, 922 F.3d 166 (3d Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . 2, 7

*Ballentine v. United States*, 486 F.3d 806 (3d Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Bradley v. T-Mobile US, Inc.*, 2020 WL 1233924 (N.D. Cal. Mar. 13, 2020) . . . . . . . . . . . . . . 12

*Carney v.  Adams,* 141 S.Ct. 493 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Dept. of Commerce v.  New York*, 139 S.Ct.  2551 (2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Edgar v. Coats,* 454 F.Supp.3d 502 (D. Md. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Great West Casualty Company v. Packaging Corporation of America*, 444 F.Supp.3d 664 (M.D.S.C. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hunter v. Branch Banking and Trust Co.*, 2013 WL 4052411 (N.D. Tex. Aug. 12, 2013) . . . . . 13

*In re Horizon Healthcare Services Inc. Data Breach Litigation*, 846 F.3d 625 (3d Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re McCaffrey,* 545 A.2d 617 (Del. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Navy Chaplaincy,* 697 F.3d 1171 (D.C. Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Northeastern Florida Chapter of Associated General Contractors of America v. City of Jackson, Fla.*, 508 U.S. 656 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Perry v.  Sheahan*, 222 F.3d 309 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Thomas v. King*, 99 A.2d 778 (Del. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

ii

*Warth v. Seldin*, 422 U.S. 490 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Worth v. Jackson*, 451 F.3d 854 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Zapata v. HSBC Holdings PLC*, 414 F.Supp.3d 342 (E.D.N.Y. 2019), *aff'd*, 825 Fed.Appx. 55 (2nd Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## Other Authorities

42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. §1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. §1391(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

F.R.E. 201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Del. Const., Art. IV, §3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5

Del. Const. Art. IV §2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

15 Del. C. §101(15) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

Defendant Gov. John Carney asks this Court to adopt a test for standing that would require one challenging the constitutionality of Delaware's judicial selection process, as set forth in Article IV, §3 of the Constitution of the State of Delaware, to (i) engage in futile acts contrary to the teaching of the United States Supreme Court to prove that the challenger is "able and ready" to apply, (ii) not only have the psychic ability to predict when there will be upcoming vacancies so that the claimed injury will be "imminent," but also to file suit shortly before an opening is announced, (iii) be ready and able at all times to apply for a judgeship from the moment one decides one wants to be a judge, no matter what else may occur in a person's life.

This is an impossible standard to meet, and one which the Supreme Court has never sanctioned.  Gov. Carney's goal is not merely to convince the Court that Adams lacks standing, but to create a test for standing that would prevent any challenge ever to Article IV, §3.

The circumstances of the present action, based on facts arising after the filing of the Complaint in previous litigation, establish that Adams is both able and ready to serve as a judge. This is established not merely by Adams' words, but also by his deeds.  He developed a concrete plan to make it more likely that he will achieve his goal.  He applied for judgeships when he was eligible and available.  Absent a judicial ruling, the harm will continue routinely and perpetually. As such, Adams has easily met the requirements for Article III standing.

1

## NATURE AND STAGE OF THE PROCEEDINGS

A. *Adams I.*

Plaintiff James R. Adams filed his first action on February 21, 2017. *Adams v. Carney*, C.A. No. 17-181-MPT (the docket of which is attached hereto as Exhibit A). The parties cross-moved for summary judgment on September 29, 2017. On December 6, 2017, the District Court issued its first opinion granting summary judgment to Adams. *Adams v. Carney*, 2017 WL 6033650 (D. Del. Dec. 6, 2017). Gov. Carney filed a motion for clarification of the December 6 Opinion, to determine the scope of the holding in that Opinion. On January 5, 2018, the Governor filed an appeal with the Third Circuit in order to preserve his appellate rights during the pendency of the motion for clarification.

On May 23, 2018, the District Court ruled on the Governor's motion for clarification and denied without prejudice Adams' motion to hold the Governor in contempt. *Adams v. Carney*, 2018 WL 2411219 (D. Del. May 23, 2018).

Subsequently, the District Court granted Gov. Carney's motion for a stay pending appeal. *Adams v. Carney*, 2018 WL 3105113 (D. Del. June 25, 2018). The Third Circuit affirmed in part and reversed in part the ruling of the District Court. *Adams v. Governor of Delaware*, 922 F.3d 166 (3d Cir. 2019). When the Third Circuit Opinion became final, the stay issued by the District Court dissolved. The Governor did not seek a further stay.

The Governor filed a petition for certiorari with the Unites States Supreme Court on September 4, 2019. *Carney v. Adams*, 141 S. Ct. 493 (2020). The appeal was accepted by that Court on December 6, 2019. *Carney v. Adams*, 140 S.Ct. 602 (2019). On December 10, 2020, the Supreme Court reversed the Third Circuit and held that Plaintiff failed to prove under the facts presented to

2

the District Court that he had standing to challenge the Article IV, §3 of the Delaware Constitution. *Carney v. Adams*, 141 S. Ct. 493 (2020).

B.      *Adams II.*

On the same day the Supreme Court issued its decision, Adams filed the present action. (The docket in this action is attached hereto as Exhibit B).

On February 18, 2021, Gov. Carney filed a Motion to Dismiss on the ground that Adams lacked standing.  On February 25, 2021, Adams filed an Amended Complaint.  Consequently, the District Court denied the Motion to Dismiss on the ground of mootness. On March 18, 2021, Gov. Carney filed a new Motion to Dismiss, also on the ground of standing, along with a supporting opening brief.

Thus is Adams' brief in opposition to that Motion to Dismiss.

## STATEMENT OF FACTS

### THE PARTIES

Plaintiff James R. Adams is a graduate of Ursinus College and Delaware Law School. He member of the Bar of the State of Delaware. He resides in New Castle County, Delaware. After three years in private practice, he went to work for the Delaware Department of Justice. There, he served as Assistant State Solicitor under Attorney General Beau Biden. He has also served as Deputy Division Director of the Family Division, which handles cases involving domestic violence, child abuse and neglect, child support orders, and juvenile delinquency and truancy. He retired from the Department of Justice on December 31, 2015. Until 2017, he was registered as a Democrat, but in early 2017 changed his political status from Democrat to unaffiliated. (Am. Compl. ¶2[1]).

Defendant the Hon. John Carney is the Governor of the State of Delaware. Pursuant to Article IV, Section 3 of the Constitution of the State of Delaware, the Governor is responsible for appointing judges to Delaware state courts. He makes judicial appointments pursuant to the authority granted to him by the Constitution of the State of Delaware. He is currently compelled by the Constitution of the State of Delaware to exercise that authority in a politically discriminatory way. The Governor takes these actions under color of state law. (Am. Compl. ¶3).

---

[1]

"For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

4

## VENUE, SUBJECT MATTER JURISDICTION AND STANDING

Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(b), as all of the parties in this action reside in Delaware and all of the events involved in this action took place in Delaware. (Am. Compl. ¶4).

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 as the case arises under the First and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. §1983. (Am. Compl. ¶5).

Adams has standing to bring this challenge as he is a member of the Delaware Bar who at various times has applied for a judgeship but is ineligible because he is not a member of a political party. As set forth below, Adams has applied for, and been rejected for several judicial positions, and is ready and able to do so again if the opportunity arises.  The limitation restricting judgeships to members of political parties, however, denies absolutely Adams' ability, and the ability of all unaffiliated and minority party lawyers, to be considered for a judgeship on the merits, causing a concrete injury in fact.  Adams has desired and still desires a judgeship. In furtherance of his desire, he contacted the State of Delaware Office of Pensions to inquire what would happen to his pension if he were appointed to a judgeship. (Am. Compl. ¶6).

## BACKGROUND

Article IV, Section 3 of the Constitution of the State of Delaware contains a provision, unique to Delaware, which provides, in pertinent part, that:

> Appointments to the office of the State Judiciary shall at all times be subject to all of the following limitations:
>
> First, three of the five Justices of the Supreme Court in office at the same time, shall be of one major political party, and two of said Justices shall be of the other major political party.

Second, at any time when the total number of Judges of the Superior Court shall be an even number not more than one-half of the members of all such offices shall be of the same political party; and at any time when the number of such offices shall be an odd number, then not more than a bare majority of the members of all such offices shall be of the same major political party, the remaining members of such offices shall be of the other major political party.

Third, at any time when the total number of the offices of the Justices of the Supreme Court, the Judges of the Superior Court, the Chancellor and all the Vice-Chancellors shall be an even number, not more than one-half of the members of all such offices shall be of the same major political party; and at any time when the total number of such offices shall be an odd number, then not more than a bare majority of the members of all such offices shall be of the same major political party; the remaining members of the Courts above enumerated shall be of the other major political party.

Fourth, at any time when the total number of Judges of the Family Court shall be an even number, not more than one-half of the Judges shall be of the same political party; and at any time when the total number of Judges shall be an odd number, then not more than a majority of one Judge shall be of the same political party.

Fifth, at any time when the total number of Judges of the Court of Common Pleas shall be an even number, not more than one-half of the Judges shall be of the same political party; and at any time when the total number of Judges shall be an odd number, then not more than a majority of one Judge shall be of the same political party.

(Am. Compl. ¶7) (the "Provisions").

Thus, the Provisions require that judicial openings be filled by "major" political parties. Although the Constitution of the State of Delaware does not define the phrase "major political party," the Delaware Code defines it as "any political party which, as of December 31 of the year immediately preceding any general election year, has registered in the name of that party voters equal to at least 5 percent of the total number of voters registered in the State," 15 Del. C. §101(15). "Political party" is defined as

any political organization which elects a state committee and officers of a state committee, by a state convention composed of delegates elected from each representative district in which the party has registered members, and which nominates candidates for electors of President and Vice-President, or nominates

candidates for offices to be decided at the general election. All political parties shall be divided into 2 classes:

a. "Major political party" means any political party which, as of December 31 of the year immediately preceding any general election year, has registered in the name of that party voters equal to at least 5 percent of the total number of voters registered in the State.

b. "Minor political party" means any political party which does not qualify as a major political party.

*Id.*

On February 21, 2017, Adams filed suit in this Court to have the requirement that judges be members of a major or minor political party declared in violation of his freedom of political association protected under the First Amendment to the Constitution of the United States. Adams v. Carney, C.A. No. 17-181-MPT. The parties cross-moved for summary judgment. On December 6, 2017, the Court issued a Memorandum Opinion entering summary judgment in Adams' favor and denying Gov. Carney's motion for summary judgment. *Adams v. Carney*, 2017 WL 6033650 (D. Del. June 11, 2017). (Am. Compl. ¶9).

On January 5, 2018, Gov. Carney filed a Notice of Appeal to the U.S. Court of Appeals for the Third Circuit from the decision of this Court entering judgment in Adams' favor. (Am. Compl. ¶10). On June 25, 2018, this Court entered a stay of its ruling pending resolution of the appeal in the Third Circuit. (Am. Compl. ¶11).

. On April 10, 2019, the Third Circuit issued a Revised Opinion affirming the decision of the District Court. *Adams v. Governor of the State of Delaware*, 922 F.3d 166 (3d Cir. 2019). Gov. Carney filed a Petition for Certiorari to the United States Supreme Court, but did not seek a stay if the Third Circuit's ruling. Consequently, for the time being at least, the State of Delaware was

7

prevented from excluding lawyers who were neither Democrats nor Republicans from consideration for a judgeship. (Am. Compl. ¶12).

On September 4, 2019, Gov. Carney filed a petition for certiorari with the United States Supreme Court.  On December 6, 2019, the Supreme Court agreed to hear the case. (Am. Compl. ¶13).

As there was no stay of the Third Circuit's ruling, Adams set a plan for applying for judgeships.  First, he would not apply for any judgeship where a sitting judge was seeking reappointment, as in Delaware it is extremely rare that a judge seeking reappointment is denied same. Second, he deferred seeking a judgeship in either the Supreme Court or the Court of Chancery because, even though he believed he was qualified for those positions, Adams concluded that he would not realistically be considered.[2]  Instead, he would focus on the Superior Court and the Court of Common Pleas.  He also declined to apply for two Superior Court openings that arose outside of New Castle County, where Adams resides, as traditionally Delaware state judges are chosen from the same county in which they reside, and Adams did not intend to relocate.  (Am. Compl. ¶14).

Two Superior Court judgeship in New Castle County became available after the Third Circuit's ruling, in April and November,  2019.  The timing, however, was bad for Adams.  In 2017, he started a single member LLC in order to buy a small investment lot in West Virginia. In 2018 and

---

[2]

Gov. Carney notes that Adams did not apply for a position on the Supreme Court and the Court of Chancery in 2019. (Defendant's Opening Brief (DOB) 10). That is why. Gov. Carney also notes that Adams did not apply for positions on the Superior Court in 2020. (*Id.*). As shown in Exhibits 6 and 7 to the Declaration of David C.  McBride, both of those positions were located in Sussex County, Delaware. Adams is located in New Castle County, Delaware.  Adams decided as part of his plan that he would not seek judgeships outside of New Castle County, as judgeship positions in a given county are normally filled by lawyers who reside in that county.  (Am.  Compl. ¶14).

2019 this small effort greatly expanded.  The LLC bought, rehabbed and sold a condominium in Ocean City, Md., purchased and rehabbed a townhouse in Ocean City, Md., bought rehabbed and sold a house in Sassafras, Md., bought rehabbed and sold a house in Still Pond, Md., sold the lot in West Virginia, bought another lot in West Virginia, bought and rehabbed a cabin in West Virginia, and bought a historic church in NY.  As Adams was very tied up with the LLC during that time he had to pass on those judgeships. As things settled down he began applying again in 2020 and 2021.  (Am. Compl. ¶15).

On February 26, 2020, the Delaware Judicial Nominating Commission announced a vacancy in the Court of Common Pleas of the State of Delaware. Adams applied for that position, but was advised by letter dated April 29, 2020, that his name would not be forwarded to the Governor for further consideration. (Am. Compl. ¶3 & Ex. C thereto). (Am. Compl. ¶16).

On December 10, 2020, the United States Supreme Court issued its Opinion ruling that Adams did not have standing to sue and so reversed the decisions of the lower courts.  The Supreme Court did not address the First Amendment issue. (Am. Compl. ¶17).

On January 19, 2021, a judicial vacancy was announced in the Court of Common Pleas. Adams applied for that position and, as of the filing of the Amended Complaint, was waiting to hear about it.  (Am. Compl. ¶18).  After the Amended Complaint was filed he received notice that his name is not going to the Governor. (Ex. E).

9

## ARGUMENT

### I.     ADAMS HAS ESTABLISHED STANDING.

To establish standing under Article III of the Constitution of the United States, Adams has to allege facts demonstrating (I) an injury in fact, (ii) a causal connection between the injury and the conduct complained of, and (iii) a likelihood that the injury will be redressed by a favorable decision by this Court.  *Carney v.  Adams,* 141 S.Ct. 493, 498 (2020)  ("*Adams I*").[3] The elements must be established by facts existing as of the date of the filing of the Complaint.  *Id*. at 499.

In reviewing the allegations of a Complaint being challenged on the ground of standing, the Court accepts Adams' well-pleaded factual allegations as true and draws all reasonable inferences from those allegations in the Plaintiffs' favor. *In re Horizon Healthcare Services Inc. Data Breach Litigation*, 846 F.3d 625, 633 (3d Cir. 2017).

### A.     ISSUE PRECLUSION DOES NOT APPLY HERE BECAUSE THE CLAIM OF STANDING IS BASED ON FACTS OCCURRING AFTER THE AMENDED COMPLAINT IN *ADAMS I* WAS FILED.

Standing is determined by facts that arose prior to the filing of the Complaint. Absent an amendment of the Complaint, standing cannot be established by facts arising after the Complaint is filed.

It is true that factual findings made in determining standing are res judicata in a subsequent action where the issue of standing is again being litigated.  However, where the claim of standing is based on facts arising subsequent to the filing of a prior Complaint, or the final opportunity to present those facts to the Court, the doctrine of issue preclusion is not applicable.  *Perry v.  Sheahan*, 222

---

[3]    Gov. Carney has not challenged the second or third elements of the standing test, and so Adams will not address it in this brief.

F.3d 309, 318 (7th Cir. 2000).  *See also Zapata v. HSBC Holdings PLC*, 414 F.Supp.3d 342, 349 (E.D.N.Y. 2019), *aff'd*, 825 Fed.Appx. 55 (2nd Cir. 2020) (issue preclusion applicable on jurisdictional issue because "the complaint does not set forth, nor is the court aware of, any jurisdictional facts not known or knowable to Plaintiffs when they filed the [prior] Texas Action").

In *Adams I*, Adams filed his original Complaint on February 1, 2017 and his Amended Complaint on April 10, 2018.  On December 6, 2017, this Court ruled that Adams had established standing and entered summary judgment in his favor.  At that point there was neither the need nor the opportunity to amend his Complaint to add new facts.  Ultimately, the Supreme Court decided that the evidence did not support a finding of standing.

The Complaint in the present action describes action taken *after* the District Court ruled in Adams' favor, when he became newly-eligible for positions based on the District Court's ruling, as well as actions taken after the Third Circuit issued its ruling – the development of a plan of action and his application for certain judgeships (and his reasons for not applying for certain others).  As such, issue preclusion does not apply.[4]

---

[4]

Gov. Carney claims that the Supreme Court established Adam's motives for filing *Adams I*, and that such determination is binding here. (DOB 16).  To the extent that Gov. Carney is insinuating that the Supreme Court found that Adams' motivation was anything less than a sincere desire to become a judge, the Supreme Court made no such finding.

**B.     ADAMS HAS PLEADED FACTS SHOWING THAT HE IS "ABLE AND READY"[5] TO APPLY FOR A JUDGESHIP.**

**1.     Adams Has Developed A Concrete Plan.**

The Supreme Court noted that Adams did not have a concrete plan for applying for a judgeship. However, after he became eligible for judgeships as a result of his victory in the District Court, he developed a concrete plan. First, he would not apply for any judgeship where a sitting judge was seeking reappointment, as in Delaware it is extremely rare that a judge seeking reappointment is denied same. Second, he deferred seeking a judgeship in either the Supreme Court or the Court of Chancery because, even though he believed he was qualified for those positions, Adams concluded that he would not realistically be considered. Instead, he decided to focus on the Superior Court and the Court of Common Pleas. He also limited his geographic scope to New Castle County, where he resides, as traditionally Delaware state judges are chosen from the same county in which they reside, and Adams did not intend to relocate.  For these reasons he declined to apply for two Superior Court opening that arose outside of New Castle County.  (Am.  Compl.  ¶14).

Gov.  Carney ignores these pleaded facts.  More importantly, Gov. Carney does not offer any reasoned argument about why Adams' plan does not qualify as a concrete plan.  Indeed, what else could constitute a concrete plan in this circumstance?  Lawyers have no idea when an opening might

---

[5]

"Able" means qualified and "ready" means seeking employment and genuinely interested in the position. *Bradley v. T-Mobile US, Inc.*, 2020 WL 1233924 at *10 (N.D. Cal. Mar. 13, 2020). There is no dispute that Adams is able, as the only qualifications for Delaware state judgeships is that they be "learned in the law" and "citizens of the State." Del. Const. Art. IV §2.  Adams is a member of the Bar of the State of Delaware who lives in Delaware.  (Am. Compl. ¶2).  As Adams is a member of the Delaware law, he is deemed to be learned in the law. *See In re McCaffrey,* 545 A.2d 617, 618 (Del. 1988).

arise.[6]  But Adams has put together a plan regarding what positions he will apply for when they do arrive, including reasons why. What more should realistically required or could be done in the context of applying for a judgeship? "[W]hat constitutes a sufficiently concrete plan...must be evaluated in context."  *Hunter v. Branch Banking and Trust Co.*, 2013 WL 4052411 at *4 (N.D. Tex. Aug. 12, 2013).

## 2.   Adams Applied for Judgeships.

The Supreme Court held that, to show that he is able and ready to apply for a judgeship, he must show that "he is likely to apply to become a judge in the reasonably foreseeable future if Delaware did not bar him because of his political affiliation" *Carney*, 141 S.Ct. at 498. The Supreme Court noted that Adams had not applied previously.  He did not do so because, as of the time he began looking for a judgeship he was no longer a member of a major political party, as required by Delaware's Constitution. The Supreme Court reaffirmed the  principle that a party need not make a formal application when it would amount to a futile gesture.  *Id.* at 503.[7]  Nonetheless, the Supreme Court held that in the absence of other indicia of intent such as a history of applications or identification of a plan, Adams' statement of intent was of itself insufficient to establish that he was able and ready to apply.  *Id*. at 501-03.

The circumstances of the present action differ remarkably.  This Court in *Carney I* issued a stay of its ruling pending appeal to the U.S. Court of Appeals for the Third Circuit.  (Am.  Compl.

---

[6]

Lawyers could learn when sitting judges were appointed and calculate when their term is up, but that does not tell lawyers whether those judges will seek reappointment.   As such it is mere speculation.

[7]

Obviously, applying when Adams was not a member of a major political party would make him ineligible, and so application would be futile.

13

¶12).  However, after the ruling on the merits but prior to the entry of the stay Adams applied for a judgeship that was open in the Superior Court. His name was not forwarded to the Governor for consideration. He also applied for a position in the Court of Common Pleas during the same period, but his name was not forwarded to the Governor for consideration. (Am Compl.  ¶11 n.1).  After the stay was granted,  Adams again was ineligible for a position (outside of the Court of Common Pleas).  However, after Third Circuit ruled, there was no stay and Adams was free to apply.

Gov. Carney argues that the fact that Adams applied for a Superior Court judgeship three years ago has no evidentiary value. However, he ignores the fact that the fact that Adams did not apply for judgeships after those three years (and prior to the ruling of the Third Circuit) is because this Court stayed its summary judgment ruling in favor of Adams pending appeal.  This prevented Adams from doing anything other than making a futile gesture, which the Supreme Court has deemed unnecessary.  Adams' applications prove that, when the opportunity was available, he was ready and seized on the opportunity and made an application.

Adams had to defer applying for a little while after the Third Circuit ruled because he had to attend to activities involving significant financial investments which required his personal attention and involvement. (Am. Compl.  ¶15).  These obligations rendered him not able or willing to serve as a judge during that period.  However, no case holds that, in a circumstance where judicial opportunities arise from time to time, with no fixed timetable, a plaintiff has to be in a constant state of readiness and ability.  This would be an untenable restriction in that all people face matters in their lives which necessarily require certain priorities be temporarily reordered to deal with whatever is

14

going on in their lives.[8] For example, if a position came open shortly after Adams suffered a death in the family, would it be held against him for not applying for the judgeship because he had to spend attend to such matters as the funeral, administering the estate, mourning and comforting family members, etc.? Indeed, *Carney* suggests that the real issue is whether Adams was ready and able *at the time he filed his lawsuit*, not at all times. 141 S.Ct. at 501 ("three considerations, taken together, convince us that the record evidence fails to show that, *at the time he commenced the lawsuit*, Adams was 'able and ready' to apply for a judgeship," italics added).

Once that was resolved, Adams began applying. In February 2020, a position became open on the Court of Common Pleas. Adams applied, but his name was not forwarded to the Governor for consideration. (Am. Compl. ¶16). On January 19, 2021, another judicial vacancy was announced in the Court of Common Pleas. Adams has applied for that position and is waiting to hear about it. (Am. Compl. ¶18).[9]

Gov. Carney argues that applying for judgeships in the Court of Common Pleas does not count in the standing analysis because that Court does not restrict judgeships to major political parties, and so there is no injury. (DOB 14). This misses the point. The applications to openings in both the Superior Court and the Court of Common Pleas is evidence that Adams is "able and ready." But being

_____

[8]

      Gov. Carney's argument that "[i]t is evident that Plaintiff would not apply for a position if the Article IV Provisions are invalidated because he failed to apply when he had the opportunity to do so" (DOB 4-5) is simply illogical. That is like saying "he passed numerous bake shops in the past three years without ever buying a chocolate cake therefore he will not buy a chocolate cake in the future." It is especially illogical when the evidence is that he bought chocolate cake not only in 2018, but also in 2020 and 2021.

[9]

      Gov. Carney suggests that these applications mean that "Plaintiff's focus is now on the Court of Common Pleas." (DOB 13). That is incorrect.

"able and ready" is not of itself the injury. The denial of opportunity based on unconstitutional discrimination is the injury. *Northeastern Florida Chapter of Associated General Contractors of America v. City of Jackson, Fla.*, 508 U.S. 656, 666 (1993). The "able and ready" requirement is to show that the injury is personal and concrete, and not just a generalized grievance. *See Carney*, 141 S.Ct. at 499-500, 503.  To conclude otherwise would be to require Adams to apply to courts where he is sure to be denied because he is an unaffiliated voter.  That is the kind of futile gesture the Supreme Court deemed unnecessary. *Id.* at 503.

Gov. Carney does not argue, nor could he, that Adams filed a sham pleading.  Thus, the facts alleged must be accepted as true, with all reasonable inferences (including a presumption of  good faith). *Thomas v. King*, 99 A.2d 778, 781 (Del. 1983) (all people are presumed to act in good faith).

These actions evidence Adams' sincere intention to become a judge.  Adams made a concrete plan as how to how he was going to attain his goals, focusing on those courts as to which he believed he would have the best chance of being seen as a viable candidate.  With the reversal by the Supreme Court, any further applications, at least as to the Superior Court, would be futile gestures. He has continued to apply for positions in the Court of Common Pleas (which is not restricted to major political parties) as they have arisen.  (Am.  Compl.  ¶¶16, 18).[10]  This shows that it is more than "likely" Adams would apply in the reasonably foreseeable future. *Carney*, 1412 S.Ct.  499-500.

## C.    THERE IS A SUBSTANTIAL RISK THAT THE HARM WILL OCCUR.

To have standing, in addition to being able and ready, the harm must be either "imminent," *id.* at 498, *or,* alternatively, in the case of future injury, there must a "substantial risk that the harm

---

[10]      Adams is currently preparing an application for a Superior Court opening which was announced last month.

will occur." *Dept. of Commerce v. New York*, 139 S.Ct. 2551, 2565 (2019); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).

The harm here is the selection of judges only from members of political parties. It should be a matter subject to judicial notice that there are turnovers in state and federal judiciaries. In Delaware where judges are appointed, turnover is primarily due to death or retirement or, in rare cases, failure to be reappointed, or the expansion of a court. Even if such an obvious fact is not subject to judicial notice, evidence supporting that claim appears in the Declaration of David C. McBride in Support of Defendant's Opening Brief of His Motion to Dismiss at Exhibits 1-7 and well as Exhibits A-C of the Amended Complaint. Additional documentation is attached hereto as Exhibit C.[11]

The way Delaware lawyers learn of judicial openings is through announcements by the Judicial Nominating Commission. Such announcements indicate whether the judge is retiring, has died, or is seeking reappointment. Although announcements come with no set frequency, they do come on a fairly regular cases. In 2017 there were at least five such announcements. Ex. C hereto at C-1-5. In 2018 there were at least 4 announcements (one of which was for a judge seeking reappointment). *Id.* at C-7-9. In 2019 there were at least six. *Id.* at C-10-15. In 2020 there were at least four. *Id.* at C-16-20. There has been one so far in 2021. *Id.* at C-21.[12] This shows that positions

---

[11]

As Gov. Carney appears to agree (DOB 6 n.3), this Court can take judicial notice of the announcements of the Judicial Nominating Commission on behalf of the Governor under F.R.E. 201 (as it does not appear that either side is questioning the accuracy of the documents). Alternatively, as a motion to dismiss on the ground of standing is "properly tested under Rule 12(b)(1)," *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007), the Court may regard the pleadings as evidence on the issue, and may also consider evidence outside the pleadings without converting the proceeding to one for summary judgment. *Edgar v. Coats,* 454 F.Supp.3d 502, 520 (D. Md. 2020); *Great West Casualty Company v. Packaging Corporation of America*, 444 F.Supp.3d 664, 667 (M.D.S.C. 2020).

[12]

(continued...)

become available on a routine basis, albeit unknown as to timing.  Past history of nominations limited to major political parties indicates that, absent a declaration as to the unconstitutionality of the Delaware Provisions, it will continue, and there is not only a substantial risk, but a certainty, that the injury will occur and keep occurring on a routine basis. *See Susan B. Anthony List*, 573 U.S. at 164 (history of practice shows that the threat of harm is not "chimerical").

These facts also satisfy the "imminency test." In *Worth v. Jackson*, 451 F.3d 854 (D.C. Cir. 2006), the plaintiff brought a claim that an "affirmative employment plan" discriminated against him. In addressing standing, the Court said that where there was no doubt that the employer would continue to post jobs, "Worth's injury (competing on an uneven playing field) is sufficiently imminent for standing purposes." *Id.* at 859. *See also In re Navy Chaplaincy,* 697 F.3d 1171, 1176-78 (D.C. Cir. 2012) (where discriminatory policies continue to exist and will govern the conduct of future election boards, harm " is sufficiently non-speculative to support standing"). So, too, here.

Moreover, this recent history of judicial vacancy announcements shows that, at the time of filing, the risk of harm was imminent.  In the present action, the Complaint was filed on December 10, 2020, and the Amended Complaint was filed on February 25, 2021. (Ex. B). The next opening was announced on March 18, 2021. Ex. C at C-21.  Thus, whether one goes by the date of the original Complaint or the date of the Amended Complaint, the next opening was only weeks away.[13]

---

[12](...continued)
   Notices of openings where judges seek reappointment and openings outside of New Castle County are included in Exhibit C simply to show the regularity of notices.

[13]
   Adams filed his original Complaint in *Adams I* on February 21, 2017, and filed an Amended Complaint on April 10, 2017. (Ex. A hereto). The next openings for positions where judges were not seeking reappointment were announced on November 14, 2017. (Ex. C at C-5).

## **CONCLUSION**

WHEREFORE, for the forgoing reasons, plaintiff James R. Adams respectfully requests that the Court deny the Motion to Dismiss.

Respectfully submitted,

/s/ David L. Finger
David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 N. Orange St., 7th fl.
Wilmington, DE  19801
(302) 573-2525
Attorney for plaintiff James R. Adams

Dated: April 1, 2020

19