IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAMES R. ADAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 20-1680-MN |
| | ) |
| THE HON. JOHN CARNEY, | ) |
| Governor of the State of Delaware, | ) |
| | ) |
| Defendant. | ) |

## SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER 42 U.S.C. §1983

### INTRODUCTION

1. Plaintiff James R. Adams brings this action pursuant to 42 U.S.C. §1983 to have that portion of Article IV, Section 3 of the Constitution of the State of Delaware requiring that judges in Delaware be selected based, in part, on their political affiliation, and excluding members of minority political parties and politically unaffiliated voters, be declared unconstitutional as being in violation of the right to freedom of political association guaranteed by the First and Fourteenth Amendments to the Constitution of the United States.

### PARTIES

2. Plaintiff James R. Adams is a graduate of Ursinus College and Delaware Law School. He member of the Bar of the State of Delaware. He resides in New Castle County, Delaware. After three years in private practice, he went to

work for the Delaware Department of Justice. There, he served as Assistant State Solicitor under Attorney General Beau Biden. He has also served as Deputy Division Director of the Family Division, which handles cases involving domestic violence, child abuse and neglect, child support orders, and juvenile delinquency and truancy. He retired from the Department of Justice on December 31, 2015. Until 2017, he was registered as a Democrat, but in early 2017 changed his political status from Democrat to unaffiliated.

3. Defendant the Hon. John Carney is the Governor of the State of Delaware. Pursuant to Article IV, Section 3 of the Constitution of the State of Delaware, the Governor is responsible for appointing judges to Delaware state courts. He makes judicial appointments pursuant to the authority granted to him by the Constitution of the State of Delaware. He is currently compelled by the Constitution of the State of Delaware to exercise that authority in a politically discriminatory way. The Governor takes these actions under color of state law.

**VENUE, SUBJECT MATTER JURISDICTION AND STANDING**

4. Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(b), as all of the parties in this action reside in Delaware and all of the events involved in this action took place in Delaware.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 as the case arises under the First and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. §1983.

6. Adams has standing to bring this challenge as he is a member of the Delaware Bar who at various times has applied for a judgeship but is ineligible because he is not a member of a political party. As set forth below, Adams has applied for, and been rejected for several judicial positions, and is ready and able to do so again if the opportunity arises. The limitation restricting judgeships to members of political parties, however, denies absolutely Adams' ability, and the ability of all unaffiliated and minority party lawyers, to be considered for a judgeship on the merits, causing a concrete injury in fact. Adams has desired and still desires a judgeship. In furtherance of his desire, he contacted the State of Delaware Office of Pensions to inquire what would happen to his pension if he were appointed to a judgeship.

## BACKGROUND

7. Article IV, Section 3 of the Constitution of the State of Delaware contains a provision, unique to Delaware, which provides, in pertinent part, that:

> Appointments to the office of the State Judiciary shall at all times be subject to all of the following limitations:
>
> First, three of the five Justices of the Supreme Court in office at the same time, shall be of one major political party, and two of said Justices shall be of the other major political party.

3

Second, at any time when the total number of Judges of the Superior Court shall be an even number not more than one-half of the members of all such offices shall be of the same political party; and at any time when the number of such offices shall be an odd number, then not more than a bare majority of the members of all such offices shall be of the same major political party, the remaining members of such offices shall be of the other major political party.

Third, at any time when the total number of the offices of the Justices of the Supreme Court, the Judges of the Superior Court, the Chancellor and all the Vice-Chancellors shall be an even number, not more than one-half of the members of all such offices shall be of the same major political party; and at any time when the total number of such offices shall be an odd number, then not more than a bare majority of the members of all such offices shall be of the same major political party; the remaining members of the Courts above enumerated shall be of the other major political party.

Fourth, at any time when the total number of Judges of the Family Court shall be an even number, not more than one-half of the Judges shall be of the same political party; and at any time when the total number of Judges shall be an odd number, then not more than a majority of one Judge shall be of the same political party.

Fifth, at any time when the total number of Judges of the Court of Common Pleas shall be an even number, not more than one-half of the Judges shall be of the same political party; and at any time when the total number of Judges shall be an odd number, then not more than a majority of one Judge shall be of the same political party.

8. Thus, the Constitution of the State of Delaware requires that:

    a. A bare majority of the Delaware Supreme Court must be members of "one major political party," with the rest having to be members "of the other major political party." Although the Constitution of the State of Delaware does not define the phrase "major political party," the Delaware Code defines it as "any

4

political party which, as of December 31 of the year immediately preceding any general election year, has registered in the name of that party voters equal to at least 5 percent of the total number of voters registered in the State," 15 Del. C. §101(15).

   b.  When there is an even number of judges of the Superior Court, half of the seats must be filled by members of one political party.  Where there is an odd number of judges of the Superior Court, a "bare majority" of the seats must be filled by members of one "major political party" with the remaining seats to be filled by members of "the other major political party";

   c.  When there are an even number of seats of the Supreme Court, the Superior Court and the Court of Chancery, not more than half of those seats must be held by members of the same political party.  If there are an odd number of the total seats amongst those three courts, no more than a bare majority may be filled by members of one "major political party," and the remaining seats "shall be of the other major political party";

   d.  In the Family Court and the Court of Common Pleas, if there are an even number of seats, no more than half of those seats may be held by members of the same political party.  If there are an odd number of seats, members of the same political party may constitute only a bare majority of the total number of seats.

  9.  On February 21, 2017, Adams filed suit in this Court to have the requirement that judges be members of a major or minor political party declared in

violation of his freedom of political association protected under the First Amendment to the Constitution of the United States. *Adams v. Carney,* Civil Action No. 17-181-MPT.  The parties cross-moved for summary judgment. On December 6, 2017, this Court issued a Memorandum Opinion entering summary judgment in Adams' favor and denying Gov. Carney's motion for summary judgment. *Adams v. Carney,* 2017 WL 6033650 (D. Del. June 11, 2017).

    10.    On January 5, 2018, Gov. Carney filed a Notice of Appeal to the U.S. Court of Appeals for the Third Circuit from the decision of this Court entering judgment in Adams' favor.

    11.    On June 25, 2018, this Court entered a stay of its ruling pending resolution of the appeal in the Third Circuit.[1]

    12.    On April 10, 2019, the Third Circuit issued a Revised Opinion affirming the decision of the District Court. *Adams v. Governor of the State of Delaware*, 922 F.3d 166 (Del. 2019).  Gov. Carney did not obtain a stay of the Third Circuit's ruling pending any proceedings before the U.S. Supreme Court. Consequently, for the time being at least, the State of Delaware was prevented from

---

[1] After the ruling of this Court but prior to the entry of the stay Adams applied for a judgeship that was open in the Superior Court.  His name was not forwarded to the Governor for consideration. (Ex. A).  He also applied for a position in the Court of Common Pleas during the same period, but his name was not forwarded to the Governor for consideration. (Ex. B).

excluding lawyers who were neither Democrats nor Republicans from consideration for a judgeship.

13. On September 4, 2019, Gov. Carney filed a petition for certiorari with the United States Supreme Court. On December 6, 2019, the Supreme Court agreed to hear the case.

14. Adams set a plan for applying for judgeships. First, he would not apply for any judgeship where a sitting judge was seeking reappointment, as in Delaware it is extremely rare that a judge seeking reappointment is denied same. Second, he deferred seeking a judgeship in either the Supreme Court or the Court of Chancery because, even though he believed he was qualified for those positions, Adams concluded that he would not realistically be considered. Instead, he would focus on the Superior Court and the Court of Common Pleas. He also declined to apply for two Superior Court opening that arose outside of New Castle County, where Adams resides, as traditionally Delaware state judges are chosen from the same county in which they reside, and Adams did not intend to relocate.

15. Two Superior Court judgeship in New Castle County became available after the decision of the Third Circuit's ruling, in April and November, 2019. The timing, however, was bad for Adams. In 2017, he started a single member LLC in order to buy a small investment lot in West Virginia. In 2018 and 2019 this small effort greatly expanded. The LLC bought, rehabbed and sold a condominium in

Ocean City, Md., purchased and rehabbed a townhouse in Ocean City, Md., bought rehabbed and sold a house in Sassafras, Md., bought rehabbed and sold a house in Still Pond, Md., sold the lot in West Virginia, bought another lot in West Virginia, bought and rehabbed a cabin in West Virginia, and bought a historic church in NY. As Adams was very tied up with the LLC during that time he had to pass on those judgeships. As things settled down he began applying again in 2020 and 2021

16. On February 26, 2020, the Delaware Judicial Nominating Commission announced a vacancy in the Court of Common Pleas of the State of Delaware. Adams applied for that position, but was advised by letter dated April 29, 2020, that his name would not be forwarded to the Governor for further consideration. (Ex. C hereto).

17. On December 10, 2020, the United States Supreme Court issued its Opinion ruling that Adams did not have standing to sue and so reversed the decisions of the lower courts. The Supreme Court did not address the First Amendment issue. *Carney v. Adams*, 141 S.Ct. 493 (2020).

18. On January 19, 2021, a judicial vacancy was announced in the Court of Common Pleas. (Ex. D). Adams applied for that position, but was notified by letter dated March 12, 2021, that his name would not be forwarded to the Governor for consideration. (Ex. E).

19. On March 18, 2021, a judicial vacancy was announced in the Superior Court. (Ex. F). Adams applied for that position , but was notified by letter dated May 26, 2021, that his name would not be forwarded to the Governor for consideration. (Ex. G).

**COUNT I**
(Violation of Freedom of Political Association under
the First Amendment and 42 U.S.C. §1982)

20. Adams incorporates by reference the allegations contained in numbered paragraphs 1-19 above as if fully set forth herein.

21. The First Amendment to the Constitution of the United States of America states, in pertinent part, that "Congress shall make no law…abridging…the right of the people peaceably to assemble." This clause has given rise to what is known as the "freedom of association."

22. Under the First Amendment freedom of association, the government may not exclude anyone from public employment on the basis of their political affiliation. The basic right of political association is assured by the First Amendment to the United States Constitution and is protected against state infringement by the Fourteenth Amendment.

23. It is well settled that a state may not condition hiring or discharge of employees in a way which infringes on their right to political association. It is

9

equally well established that conditioning hiring decisions on political belief and association plainly constitutes an unconstitutional condition.

24. There are two recognized exceptions to the constitutional restriction on employment based on political association: (i) where the position is high enough that the job has direct influence on policy, or (ii) where the employee's private political beliefs would interfere with the discharge of his or her public duties.

25. Neither of those exceptions apply here. Delaware judges have consistently stated that it is the job of the Legislature, and not the courts, to set policy. And no one suggests that, other than appearing before the Legislature to request funding, Delaware judges have any policy-related interaction with government officials.

26. Further, Delaware judges of both political parties have served the State honorably, without fear or favor. There has never been occasion to question a judge's ruling as being based on his or her political affiliation. As such, there is no basis to conclude that a judge's private political beliefs would interfere with the performance of his or her public duties.

27. The denial of any opportunity for a judgeship unless Adams is a Republican or a Democrat is an injury-in fact as it denies Adams his constitutional rights under the First Amendment.

## COUNT II
(Violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States and 423 U.S.C. §1983)

28. Adams incorporates by reference the allegations contained in numbered paragraphs 1-27 above as if fully set forth herein).

29. By restricting judgeships to members of political parties, Delaware's Constitution situates politically unaffiliated lawyers differently from those who are members of political parties, denying them any consideration on their merits.

30. There is no rational relationship for excluding lawyers with no political affiliation from being judges.  Political affiliation has no bearing on ability and judges' political ideologies are not supposed to interfere with their independent decision-making.

31. The denial of any opportunity for a judgeship unless Adams is a Republican or a Democrat denies Adams his constitutional right to equal protection under the law under the Fourteenth Amendment to the Constitution of the United States.[2]

---

[2] To be clear, Adams is challenging only the constitutionality of the "major political party" provision, which excludes from consideration anyone who is not a member of a "major political party," as that term is defined under Delaware law. 15 Del. C. §101(15).  Adams is not challenging the "political balance" provision because he has determined that, if the "major political party" provision is struck down, there will be no limit on how many positions on any court unaffiliated lawyers can hold, as they are not members of a political party, major or minor.  As such, Adams recognizes that he lacks standing to challenge the "political balance" provision.

WHEREFORE, for the foregoing reasons, plaintiff James R. Adams respectfully requests that this Court enter an Order (i) holding that the provision of Article IV, Section 3 of the Constitution of the State of Delaware restricting judgeships exclusive to Democrats and Republicans courts is unconstitutional as it violates the freedom of association guaranteed by the First and Fourteenth Amendments to the Constitution of the United State and the right of Equal Protection under the Fourteenth Amendment, (ii) permanently enjoining the exclusion of those who are not Democrats or Republicans for appointment of judges to the Courts of Delaware, and (iii) awarding Mr. Adams his costs and reasonable attorneys' fees pursuant to 42 U.S.C. §1988.

        Respectfully submitted,

/s/ David L. Finger_____
David L. Finger (ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 N. Orange St., 7th fl.
Wilmington, DE  19801
(302) 573-2525
Attorney for plaintiff James R. Adams

Dated:   November 29, 2021