IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAMES R. ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-1680-MN |
| | ) | |
| THE HON. JOHN CARNEY, | ) | |
| Governor of the State of Delaware, | ) | |
| | ) | |
| Defendant. | ) | |

## **DEFENDANT'S OPENING BRIEF IN SUPPORT OF HIS MOTION TO DISMISS**

*Of Counsel*:

WILSON SONSINI GOODRICH
 & ROSATI, PC

Randy J. Holland
222 Delaware Avenue, Suite 800
Wilmington, DE 19801
(302) 304-7600

Michael W. McConnell
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300

Steffen N. Johnson
G. Edward Powell III
1700 K Street, N.W.
Washington, DC 20006
(202) 973-8800

Brian J. Levy
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
(212) 999-5800


Dated: December 20, 2021

YOUNG CONAWAY STARGATT
 & TAYLOR, LLP

David C. McBride (No. 408)
Martin S. Lessner (No. 3109)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
dmcbride@ycst.com
mlessner@ycst.com
pkraman@ycst.com

*Attorneys for Defendant*

# TABLE OF CONTENTS

Page

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................... 1

NATURE AND STAGE OF THE PROCEEDINGS AND STATEMENT OF FACTS .............. 3

I.  *Adams I*, Plaintiff's Applications for Judicial Positions, and Real Estate Business.............. 3

II.  *Adams II* ................................................................................................................................ 5

ARGUMENT .................................................................................................................................. 6

I.  Plaintiff's Supplemental Complaint Should Not Be Considered........................................... 7

    A.  Plaintiff's Application for a Position on the Superior Court in
        April 2021 Cannot Establish Standing Because It Occurred After
        the Filing of this Action ................................................................................................ 7

    B.  The Other Facts Alleged in the Supplemental Complaint, Which
        Occurred Before the Commencement of this Lawsuit, Do Not
        Establish Standing......................................................................................................... 9

II.  Plaintiff Has No Standing Even Considering His April Application ................................... 10

    A.  Plaintiff Is Collaterally Estopped by *Adams I* From Establishing Standing ................ 10

    B.  Plaintiff Has Suffered No Genuine Injury .................................................................. 12

        1.  The Factual Determinations Made by the Supreme Court in *Adams I*
            Prove that Plaintiff Did Not Intend to Serve as Judge .............................................. 14

        2.  Plaintiff's Failure to Apply for a Superior Court Position in 2019
            Proves That He Has No Real Intention to Be a Judge ............................................. 15

        3.  Plaintiff Is Judicially Estopped From Alleging That He Was Unable
            to Apply for Judicial Positions Because of His Real Estate Investments............... 16

        4.  The Facts Are Indisputable That Plaintiff Only Applies for a Judicial
            Position When He Seeks to Manufacture Standing ................................................. 18

    C.  Plaintiff Lacks a Redressable Injury Because There Is No Realistic
        Possibility That He Would Ever Be Nominated as Judge ........................................... 20

CONCLUSION............................................................................................................................. 20

## TABLE OF AUTHORITIES

CASES                                                                                          PAGE(S)

*Adams v. Carney*,
   922 F.3d 166 (3d Cir. 2019)...................................................................................4

*Adams v. Carney*,
   C.A. No. 17-181-MPT, 2018 WL 2411219 (D. Del. May 23, 2018) .......................4

*Albuquerque Indian Rts. v. Lujan*,
   930 F.2d 49 (D.C. Cir. 1991)..................................................................................20

*Allen v. Prince George's County, Md.*,
   538 F. Supp. 833 (D. Md. 1982)..............................................................................14

*Allen v. Wright*,
   468 U.S. 737 (1984)..................................................................................................6

*Carney v. Adams*,
   140 S. Ct. 602 (2019)................................................................................................5

*Carney v. Adams*,
   141 S. Ct. 493 (2020)...................................................................................... *passim*

*In re Dex Media, Inc.*,
   595 B.R. 19 (D. Del. 2018)......................................................................................17

*Doherty v. Rutgers School of Law–Newark*,
   651 F.2d 893 (3d Cir. 1981)....................................................................................20

*Ellison v. Am. Bd. of Orthopaedic Surgery*,
   11 F.4th 200 (3d Cir. 2021) ....................................................................................10

*Fair Emp. Council of Greater Washington, Inc. v. BMC Mktg. Corp.*,
   28 F.3d 1268 (D.C. Cir. 1994) ...............................................................................13

*Finstad v. Beresford Bancorporation, Inc.*,
   831 F.3d 1009 (8th Cir. 2016) ................................................................................14

*Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist.*,
   118 F. Supp. 3d 821 (W.D. Pa. 2015)......................................................................8

*Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist.*,
   832 F.3d 469 (3d Cir. 2016)......................................................................................8

*Gregory v. Ashcroft,*
    501 U.S. 452 (1991) ...................................................................................................... 7

*Grupo Dataflux v. Atlas Global Group, L.P.,*
    541 U.S. 567 (2004) ...................................................................................................... 7

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982) .................................................................................................... 13

*Hollander v. Members of the Bd. of Regents of the Univ. of N.Y.,*
    524 F. App'x 727 (2d Cir. 2013) ............................................................................... 11

*Jones v. Southcentral Emp. Corp.,*
    488 F. Supp. 2d 475 (M.D. Pa. 2007) ....................................................................... 16

*Kyles v. J.K. Guardian Sec. Servs., Inc.,*
    222 F.3d 289 (7th Cir. 2000) ..................................................................................... 13

*L.T. Assocs., LLC v. Sussex Cty. Council,*
    C.A. No. 11-774-MPT, 2013 WL 3998462 (D. Del. Aug. 5, 2013) ............................ 4

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ................................................................................................. 7, 8

*McLaughlin v. Fisher,*
    277 F. App'x 207 (3d Cir. 2008) ............................................................................... 11

*Meyers v. Pennypack Woods Home Ownership Ass'n,*
    559 F.2d 894 (3d Cir. 1977) ...................................................................................... 13

*Mourad v. Farrell,*
    321 F.3d 6 (1st Cir. 2003) .......................................................................................... 11

*Nat'l Ass'n of Home Builders v. EPA,*
    786 F.3d 34 (D.C. Cir. 2015) ..................................................................................... 11

*Northstar Financial Advisors Inc. v. Schwab Investments,*
    779 F.3d 1036 (9th Cir. 2015) ..................................................................................... 9

*Park v. Forest Serv. of U.S.,*
    205 F.3d 1034 (8th Cir. 2000) ................................................................................. 8, 9

*Park Lake Res. Ltd. Liab. Co. v. USDA,*
    378 F.3d 1132 (10th Cir. 2004) ................................................................................. 11

*Parr v. Woodmen of the World Life Ins. Soc'y,*
    657 F. Supp. 1022 (M.D. Ga. 1987) ......................................................................... 14

*Peloro v. United States*,
    488 F.3d 163 (3d Cir. 2007) ................................................................................10

*Residences at Bay Point Condo. Ass'n, Inc. v. Standard Fire Ins. Co.*,
    641 F. App'x 181 (3d Cir. 2016) .........................................................................7

*S. Utah Wilderness All. v. Palma*,
    707 F.3d 1143 (10th Cir. 2013) ..........................................................................9

*Scahill v. District of Columbia*,
    909 F.3d 1177 (D.C. Cir. 2018) ..........................................................................9

*Sledge v. J.P. Stevens & Co.*,
    585 F.2d 625 (4th Cir. 1978) .............................................................................13

*Smith v. Pac. Props. & Dev. Corp.*,
    358 F.3d 1097 (9th Cir. 2004) ...........................................................................13

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ...................................................................................6, 12

*Tucker v. Sec'y of Health & Human Servs.*,
    588 F. App'x 110 (3d Cir. 2014) ......................................................................10

*United States v. Hays*,
    515 U.S. 737 (1995) .............................................................................................6

*Univ. of Pittsburgh v. Varian Med. Servs.*,
    630 F. Supp. 2d 576 (W.D. Pa. 2008) ..............................................................11

*Utah Ass'n of Ctys. v. Bush*,
    455 F.3d 1094 (10th Cir. 2006) ..........................................................................8

## RULES

Fed. R. Civ. P. 12(b)(1) .............................................................................................1

Fed. R. Civ. P. 15(d) .................................................................................................9

Fed. R. Civ. P. 41(b) ...............................................................................................10

## OTHER AUTHORITIES

13A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* §
    3531.6 (3d ed. 2020) ............................................................................................6

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff has filed his fifth complaint (the "Supplemental Complaint") attempting to establish standing to challenge Article IV, Section 3, of the Delaware Constitution, which governs nominations to five of Delaware's courts (the "Article IV").[1]  D.I. 32.  Article IV contains two components: (1) the "major party" component; and (2) the "bare majority" component.  Plaintiff acknowledges he lacks standing to challenge the bare majority component and only seeks to invalidate the major party component.  D.I. 32 at n.2.

The Supplemental Complaint is identical to his Amended Complaint in all but one respect.  Plaintiff added the allegation that he applied for a position on the Superior Court in April 2021 (the "April application").  D.I. 32 at ¶ 19.  The April application, however, does not establish standing.  As such, Defendant moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) on facial grounds and, if needed, on factual grounds.

The Supreme Court repeatedly has stated that standing is measured at the time the lawsuit is filed, and, consequently, events occurring after the filing of the action cannot be considered in determining standing.  For that reason alone, Plaintiff's April application is irrelevant to the standing determination.  However, Plaintiff's belated April application also does not cure the other infirmities that make his lack of standing apparent.

The Supreme Court in *Adams I* held that Plaintiff lacked standing because "the record evidence fails to show that, at the time he commenced the lawsuit, Adams was 'able and ready' to apply for a judgeship in the reasonably foreseeable future."  *Carney v. Adams*, 141 S. Ct. 493, 501

---

[1] The first and second attempts were in Plaintiff's first litigation ("*Adams I*"), which the United States Supreme Court dismissed.  The third attempt was the initial complaint filed in this action ("*Adams II*"), which Defendant moved to dismiss for lack of standing.  D.I. 12.  Rather than defend the initial complaint, Plaintiff filed, as a matter of right, his Amended Complaint.  D.I. 15.  His fifth attempt is the pending Supplemental Complaint.  D.I. 32.

(2020).   Rather, the Supreme Court concluded that "the context . . . suggests an abstract, generalized grievance, not an actual desire to become a judge." *Id.*  Nothing has truly changed.

While Plaintiff has now done what he spent nearly four years avoiding—actually applying for a judicial position—collateral estoppel precludes Plaintiff from re-litigating standing on the basis of the "plan" alleged in the Supplemental Complaint, which was allegedly formulated before *Adams I* was dismissed, or on the basis of a judicial application that could have (and should have) been made before *Adams I* was filed.

But the problems with Plaintiff's standing do not end there.   An essential element of standing is a "real," "actual," and "genuine" injury.   A person does not have a genuine injury sufficient for standing if they do not have an actual intent to accept the position at issue.   The decision in *Adams I*, the allegations in the Supplemental Complaint, and indisputable facts that may be considered on a facial or factual challenge establish that Plaintiff lacks an actual intent to serve in the judicial position for which he applied.   The pattern is obvious: Plaintiff only applies for a position when he is attempting to manufacture standing and when he *cannot* be nominated.   Thus, as the Supreme Court found, Plaintiff, as a Democrat, could have applied for any of 14 judicial positions during the four years before he filed *Adams I*, but he did not.   He only applied in late 2017—before the ruling of this Court and when Article IV was an obstacle at the time he applied. Again, in 2019 he did not apply for positions that actually met his alleged conditions and when Article IV was not an obstacle.   He only applies in April 2021 when his standing is again at issue and Article IV again is an obstacle.   Plaintiff sought to explain away his 2012 to 2016 failure in *Adams I*, but the Supreme Court was not persuaded.   Now, he seeks to explain away the failure in 2019, stating that he was too busy with certain real estate investments to apply, but his explanation is no more persuasive.   Moreover, this explanation is flatly contrary to the arguments,

allegations, and testimony he gave in *Adams I* that he intended to apply for a judicial position and was ready and able to do so.  Plaintiff is judicially estopped from making such an argument now.

Another essential element of standing also is missing:  redressability.  In order to have an injury that may be redressed by judicial relief, Plaintiff must establish that he has at least a "realistic possibility" of being nominated for a position on the Superior Court.  Absent such a possibility, there is simply no realistic need for judicial redress, even if there is an "injury."  Plaintiff fails to demonstrate such a possibility.  Plaintiff applied three times to the Court of Common Pleas, a court for which Article IV is not a barrier, and his applications were rejected each time.  In addition, Plaintiff alleges that he retired from the practice of law in 2015, and he has not practiced law for six years, soon to be seven years.  On these facts, Plaintiff cannot demonstrate a "realistic possibility" of being nominated.

On its face, Plaintiff's Supplemental Complaint fails to establish an injury-in-fact and the prospect of realistic judicial redress.  However, Defendant also makes a factual challenge to Plaintiff's standing.  Plaintiff must come forward with evidence, not allegations, that would establish his intention to serve as a judge and the realistic possibility that he could be nominated. In the absence of doing so, the Supplemental Complaint should be dismissed.  If he does so, Defendant seeks leave to take discovery from Plaintiff on his standing.

## NATURE AND STAGE OF THE PROCEEDINGS AND STATEMENT OF FACTS

### I.     *Adams I*, Plaintiff's Applications for Judicial Positions, and Real Estate Business

Shortly after coming out of retirement and days after changing his party registration, Plaintiff filed his first action on February 21, 2017.  *Adams v. Carney*, C.A. No. 17-181-MPT, D.I. 1 and 10.  Plaintiff now alleges after his retirement from the practice of law "he started a single member LLC in order to buy a small investment lot in West Virginia" in 2017.  D.I. 32 at ¶ 15.  In *Adams I*, however, Plaintiff made no mention of his real estate business.

3

On May 23, 2018, the district court issued its opinion granting summary judgment to Plaintiff (the "May 23 Opinion"). *Adams v. Carney*, C.A. No. 17-181-MPT, 2018 WL 2411219 (D. Del. May 23, 2018). On June 25, 2018, the district court stayed its May 23 Opinion pending appeal to the Third Circuit. On February 5, 2019, the Third Circuit issued an opinion affirming-in-part and reversing-in-part, then vacated the opinion upon Defendant's petition for rehearing, and ultimately issued a new opinion on April 10, 2019 (the "Third Circuit Opinion"). *Adams v. Carney*, 922 F.3d 166 (3d Cir. 2019). Defendant did not seek a stay of the Third Circuit Opinion. D.I. 32 at ¶ 12.

After the Third Circuit's ruling became final, and before the United States Supreme Court reversed that ruling, the Judicial Nominating Commission ("JNC") did not apply Article IV to any of the judicial vacancies on the Supreme Court, Court of Chancery, or Superior Court. *Id.* Yet Plaintiff did not apply for any of the vacancies on these courts during that period. Indeed, two positions opened on the Superior Court during 2019 that even met all of Plaintiff's newly expressed preconditions for a Superior Court application—the vacancies were in New Castle County and a sitting judge was not seeking reappointment—yet Plaintiff did not apply for either of those positions. *Id.* at ¶ 15. Specifically, in May, 2019, there was a vacancy on the Superior Court of New Castle County for the seat held by Judge John A. Parkins, who had retired. Declaration of David C McBride ("McBride Decl.") Ex. 1 (Apr. 25, 2019 notice). [2] And, in November 2019,

---

[2] The Court can and should consider the documents included with the McBride Declaration without converting the motion to dismiss into one for summary judgment as the exhibits are all a matter of public record and are integral to Plaintiff's claims. *See, e.g.*, *L.T. Assocs., LLC v. Sussex Cty. Council*, C.A. No. 11-774-MPT, 2013 WL 3998462, at * 3 (D. Del. Aug. 5, 2013) (explaining that a court "is not limited to the four corners of the complaint" when a motion to dismiss raises issues integral to the complaint's allegations or are part of the public record).

there was a vacancy on the Superior Court of New Castle County for the seat held by Resident Judge Richard R. Cooch, who was retiring. *Id.* at Ex. 2 (Nov. 1, 2019 notice).

In 2020, there were two more openings on the Superior Court, but Plaintiff did not seek appointment for those positions either. *Id.* at Ex. 3 (Apr. 3, 2020 notice), Ex. 4 (Oct. 26, 2020 notice). Plaintiff did apply for positions on the Court of Common Pleas in April 2018, April 2020, and January 2021, but was not nominated. D.I. 32 at n.1, ¶¶ 16, 18, and Ex. B.

Defendant filed a petition for certiorari with the Unites States Supreme Court on September 4, 2019. Petition for Writ of Certiorari, *Carney v. Adams*, 141 S. Ct. 493 (2020) (No. 19-309). The appeal was accepted by that Court on December 6, 2019. *Carney v. Adams*, 140 S. Ct. 602 (2019). On December 10, 2020, the Supreme Court reversed the Third Circuit and held that Plaintiff lacked standing to challenge Article IV. *Carney*, 141 S. Ct. at 500.

## II. ***Adams II***

On the same day the Supreme Court issued its decision, Plaintiff filed this new action, which is effectively a continuation of *Adams I*. Defendant moved to dismiss the original complaint for lack of standing. D.I. 12. On that motion, Defendant demonstrated that in 2019 the JNC did not apply Article IV to openings on the Delaware Supreme Court, Court of Chancery and the Superior Court, but that Plaintiff did not apply for any of them. In response, Plaintiff filed an Amended Complaint. D.I. 15.

In that Amended Complaint, Plaintiff made a series of allegations in an effort to explain why he did not apply to any of those positions in 2019. For the first time, Plaintiff alleged that he does not plan to apply for any position on the Supreme Court and Court of Chancery, and that he would only apply to the Superior Court if certain conditions are met. *Id.* at ¶ 14. Plaintiff also alleged, however, that even when judicial positions met his preconditions, he could not apply because he was busy with his new career, rehabbing homes. *Id.* at ¶ 15. In particular, starting in

2017 (when the district court action in *Adams I* was pending), Plaintiff started an LLC to begin investing in real estate; efforts that expanded in 2018 and 2019. *Id.*

Defendant moved to dismiss the Amended Complaint. D.I. 19. After oral argument on that motion, the Court entered an order allowing Plaintiff to file a supplemental pleading. D.I. 31. On November 29, 2021 Plaintiff filed what he titled a Second Amended Complaint, but in fact is a Supplemental Complaint because the only material amendment is the addition of the April 2021 judicial application Plaintiff submitted after the original complaint was filed. D.I. 32 at ¶ 19.

## ARGUMENT

The "irreducible constitutional minimum of standing" contains three elements. First, the plaintiff must have suffered an injury in fact. Second, there must be a causal connection between the injury and the challenged conduct. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Carney*, 141 S. Ct. at 498–99; *United States v. Hays*, 515 U.S. 737, 742–43 (1995).

The importance of Article III standing as a limitation on the unconstitutional use of the power of the federal courts was recently reiterated by the Supreme Court in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). The Supreme Court emphasized the importance of an actual injury, stating "[i]n sum, under Article III, a federal court may resolve only 'a real controversy with real impact on real persons." *Id.* Further, standing questions "must be answered by reference to the Article III notion that federal courts may exercise power only 'in the last resort, and as a necessity.'" *Allen v. Wright*, 468 U.S. 737, 752 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). "Just as separation-of-powers concerns may justify a denial of standing, so may concerns of federalism." 13A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3531.6 (3d ed.

2020).  Those federalism concerns are especially appropriate in this case, where the right of a state to structure its own judiciary is at issue.  *Gregory v. Ashcroft*, 501 U.S. 452, 460, 463 (1991).

**I.    Plaintiff's Supplemental Complaint Should Not Be Considered**

**A.    Plaintiff's Application for a Position on the Superior Court in April 2021 Cannot Establish Standing Because It Occurred After the Filing of this Action**

In *Adams I*, the Supreme Court reiterated the long-standing requirement that "Adams bears the burden of establishing standing as of the time he brought this lawsuit and maintaining it thereafter."  *Carney*, 141 S. Ct. at 499.  *See also Residences at Bay Point Condo. Ass'n, Inc. v. Standard Fire Ins. Co.*, 641 F. App'x 181, 183 (3d Cir. 2016) (same).

It follows from this principle that standing and subject matter jurisdiction cannot be based upon events that occur after the lawsuit was filed.  *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570–71 (2004) (lack of diversity subject matter jurisdiction cannot be cured based upon changes after the commencement of the lawsuit).  This requirement is particularly important with respect to Article III standing, which is a constitutional prerequisite, not simply a statutory prerequisite.  In *Lujan v. Defs. of Wildlife*, the Supreme Court ruled that redressability required for standing could not be based upon developments subsequent to the filing of the lawsuit.  504 U.S. 555, 568 (1992).  The Supreme Court found plaintiffs' alleged injury was not redressable because any ruling would not be binding on the relevant government agency, which was not a party to the action when filed.  *Id.* at 568–69.  The four-justice plurality rejected the argument that redressability had been created by the subsequent participation of that agency in the lawsuit or that the agency in question surely would follow an authoritative ruling by the Supreme Court.  The plurality rejected both arguments because "standing is to be determined as of the commencement of the suit," *id.* at 571–72 n.4 and 5, and the agency's participation occurred after the lawsuit was

filed and when the suit was filed it was not foreseeable it would reach the Supreme Court, *see id.* at 571 n.4 and 5.

The same is true with respect to the injury element of standing. For example, in *Freedom from Religion Found., Inc. v. New Kensington-Arnold Sch. Dist.*, the court held that a student and her mother lacked standing to challenge the display of a Ten Commandments monument on high school grounds because both had insufficient pre-filing contacts with the monument to constitute injury. 118 F. Supp. 3d 821 (W.D. Pa. 2015). The plaintiffs argued that after the lawsuit was filed the daughter was removed from the offending School District and this created injury. The court disagreed, stating, "[t]he shortfall with this argument, however, is that 'a plaintiff must establish standing *at the time suit is filed* and cannot manufacture standing afterwards.'" *Id.* at 832 (emphasis in original). On appeal, the Third Circuit affirmed the dismissal of the daughter's claim, but held the mother had standing based upon pre-filing contacts with the monument, reiterating that "[t]he plaintiff has the burden of demonstrating that these requirements are met at the 'commencement of the litigation,' and must do so 'separately for each form of relief sought.'" *Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 476 (3d Cir. 2016). *See also Utah Ass'n of Ctys. v. Bush,* 455 F.3d 1094, 1101 (10th Cir. 2006) (post-filing property loss cannot create standing).

This principle also applies when the standing inquiry focuses on the likelihood that the alleged injury will occur in the future. In *Park v. Forest Serv. of U.S.*, the Eighth Circuit rejected the argument that the future threat of allegedly wrongful traffic stops could be supported by evidence that such stops were instituted after the suit was filed, stating the checkpoints were

irrelevant "on the issue of standing because [they] occurred after [the plaintiff] filed her original complaint." 205 F.3d 1034, 1037–38 (8th Cir. 2000) (citing *Lujan*).

To the extent an amended complaint adds facts that existed at the time the action was commenced, the facts in the amended complaint may be considered when determining standing. *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1152–53 (10th Cir. 2013). Supplemental complaints, however, are by definition something different—they set forth events that occur subsequent to the commencement of the lawsuit. Fed. R. Civ. P. 15(d).[3]

The present action exemplifies why standing should be measured at the commencement of the lawsuit. Plaintiff filed suit the same day the Supreme Court ruled that he lacked standing, and before he suffered any injury requiring redress. Indeed, at the time Plaintiff filed his suit, he did not know if or when a judicial opening meeting his new conditions would arise. In addition, a premature filing leads to the waste and inefficiency so obvious in this case. Defendant and this Court have now addressed standing multiple times on a record that changes with every motion.

B.      **The Other Facts Alleged in the Supplemental Complaint, Which Occurred Before the Commencement of this Lawsuit, Do Not Establish Standing**

The failure of Plaintiff's initial Complaint and Amended Complaint to establish standing were addressed in the briefing on Defendant's prior motions to dismiss. Defendant will not burden the Court with a repetition of those points. Those complaints relied upon a 2017 judicial application to the Superior Court that was considered on the merits, and applications to the Court of Common Pleas. None of those applications were precluded by Article IV, and, consequently,

---

[3] There are Courts of Appeal other than the Third Circuit purporting to hold—in circumstances distinguishable from this case—that post-filing events in a supplemental complaint may establish standing. *Scahill v. District of Columbia*, 909 F.3d 1177, 1181–84 (D.C. Cir. 2018) and *Northstar Financial Advisors Inc. v. Schwab Investments*, 779 F.3d 1036, 1043–48 (9th Cir. 2015). But as the D.C. Circuit recognized in *Scahill*, other circuits do not follow this rule. *Scahill*, 909 F.3d at 1183.

Article IV did not cause any injury to Plaintiff with respect to any of those applications. D.I. 13 at 14–15 and D.I. 20 at 14. In his Supplemental Complaint, Plaintiff again explicitly concedes the lack of injury with respect to the Court of Common Pleas, D.I. 32 at n.2, and still does not allege causation with respect to his 2017 Superior Court application.

In addition, the facts as they allegedly existed at the time this lawsuit was commenced do not establish a "certainly impending" injury compared to the facts found insufficient in *Adams I* or the facts found insufficient in *Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200 (3d Cir. 2021). *See also* D.I. 28, D.I. 29 (discussing *Ellison*). Further, Plaintiff's alleged "plan" to apply for a judicial position was allegedly created during the pendency of *Adams I*, thereby invoking the doctrine of collateral estoppel, discussed *infra*.

## II.     Plaintiff Has No Standing Even Considering His April Application

Even if the Court considers post-filing events to assess standing, Defendant's motion should still be granted for three reasons: collateral estoppel precludes Plaintiff from re-litigating standing, Plaintiff has not suffered a cognizable injury, and the alleged injury is not redressable.

### A.     Plaintiff Is Collaterally Estopped by *Adams I* From Establishing Standing

The four elements for issue preclusion under federal common law exist here: (1) the issue sought to be precluded (standing) is the same as the prior action; (2) the same standing issue was actually litigated in *Adams I*; (3) standing was determined by a final and valid judgment; and (4) standing was essential to the prior judgment. *Peloro v. United States*, 488 F.3d 163, 175 (3d Cir. 2007). Although a ruling on jurisdiction is not on the merits (*see* Fed. R. Civ. P. 41(b)), the Supreme Court's unanimous holding *does* create issue preclusion with respect to standing. *See Tucker v. Sec'y of Health & Human Servs.*, 588 F. App'x 110, 114 (3d Cir. 2014).

The preclusive effect of the prior determination of standing applies regardless of whether new facts are alleged in the second action, unless the new facts are material to the issue and arose

after the first action. *Park Lake Res. Ltd. Liab. Co. v. USDA*, 378 F.3d 1132, 1137 (10th Cir. 2004); *Mourad v. Farrell*, 321 F.3d 6, 9 (1st Cir. 2003); *Hollander v. Members of the Bd. of Regents of the Univ. of N.Y.*, 524 F. App'x 727, 729 (2d Cir. 2013). The prior determination may be revisited "only if a material change following dismissal cured the original jurisdictional deficiency." *Nat'l Ass'n of Home Builders v. EPA*, 786 F.3d 34, 41 (D.C. Cir. 2015) (quoting *Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1192 and n.5, 1193 n.7 (D.C. Cir. 1983) (Scalia, J.). "A party therefore cannot avoid issue preclusion simply by offering evidence in the second proceeding that could have been admitted, but was not, in the first, but rather bears the consequences of inadequate litigation by waiving the right to do so in a subsequent case." *McLaughlin v. Fisher*, 277 F. App'x 207, 214 (3d Cir. 2008) (quoting 18 Moore's Federal Practice, § 132.02[2][d], at 132–26 (Matthew Bender 3d ed. 2006)). In this action, Plaintiff seeks to create a reasonably probable and imminent injury based upon an alleged "plan" created "after he became eligible for judgeships as a result of his victory in the District Court[.]" D.I. 22 at 12. That would mean Plaintiff allegedly derived this "plan" in 2018. However, the doctrine of collateral estoppel precludes Plaintiff from relying upon a plan developed during the pendency of *Adams I*.

Moreover, the preclusive effect has been applied not simply to events occurring before the dismissal, but also to a defect the plaintiff could have cured prior to the dismissal of the first suit. In *Univ. of Pittsburgh v. Varian Med. Servs.*, the court dismissed the University of Pittsburgh's patent infringement action for lack of standing because it failed to join the co-owner of the patent. 630 F. Supp. 2d 576, 584 (W.D. Pa. 2008), *vacated on other grounds*, 352 F. App'x 437 (Fed. Cir. 2009). After the first action was dismissed, the University attempted to cure its lack of standing by obtaining an assignment of rights and brought a second suit. The court dismissed the second action, holding that the plaintiff was precluded under collateral estoppel from establishing standing

11

based upon the assignment because "Plaintiff could have requested that [the co-owner] assign its rights in the patents-in-suit prior to filing the first action." *Id.*

The same result is appropriate here.  Plaintiff could have (and should have) applied for a judicial position *before* he filed *Adams I*.  In addition, if as Plaintiff now contends, post-filing acts may be considered for standing, Plaintiff could have (and should have) sought leave to supplement the summary judgment record in *Adams I* before the district court ruled on his standing.  Thus, Plaintiff had one assured means and another potential means of arguing before the standing issue was decided in *Adams I* that a judicial application to Superior Court would create standing.  Having decided to do neither, he cannot now relitigate his standing on the basis of an indistinguishable judicial application.

## B.   Plaintiff Has Suffered No Genuine Injury

The Supreme Court in *Adams I* recognized that a core concept of standing is whether Plaintiff has "an actual desire to become a judge." *Carney*, 141 S. Ct. at 501.  The Supreme Court explained "[w]e have long understood that constitutional phrase to require that a case embody a *genuine, live dispute* between adverse parties" and that "[i]t was not for courts to pass upon . . . abstract, intellectual problems." *Id.* at 498 (emphasis added).  Only months ago the Supreme Court reiterated that "[t]he central purpose of Article III standing is to limit the courts to resolving "only a 'real controversy with *real impact* on real persons.'" *TransUnion*, 141 S. Ct. at 2203 (emphasis added).  To demonstrate the injury is real "plaintiffs must be able to sufficiently answer the question:  'What's it to you?'" *Id.* (*quoting* Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 882 (1983)).  If the plaintiff only applies for a judicial position  in order to manufacture standing—and not because he intends to serve as a judge—there is no "real," "actual," or "genuine" injury.  Instead, there is only a

"hypothetical" injury manufactured for the purpose of resolving an abstract question and a general grievance.

This principle is most clearly applied in the so-called "tester" cases. A "tester" is a person who applies for employment or for housing with no intention of actually accepting the job or the housing offered, but rather to detect racial discrimination and bring a lawsuit. In general, courts have ruled that a "tester" has standing to bring a racial discrimination claim, but only where the defendant's alleged conduct violated a specific statutory right for which Congress intended to create a cause of action and which did not require as an element the actual deprivation of a job or housing. For example, the Supreme Court has held that the Fair Housing Act ("FHA") supports "'tester' standing." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374–75 (1982). Courts have followed the Supreme Court's reasoning in *Havens Realty* to hold that tester standing also exists under other statutory provisions banning racial discrimination. *See, e.g.*, *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 898 (3d Cir. 1977) (fair-housing testers had standing to sue under § 1981 and 42 U.S.C. § 1982); *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1103–04 (9th Cir. 2004) (under § 3604(f)(2) of the FHA); *Kyles v. J.K. Guardian Sec. Servs., Inc.*, 222 F.3d 289, 298 (7th Cir. 2000) (under Title VII of the Civil Rights Act of 1964).

However, in the absence of such a specific statutory right, a claim even for racial discrimination in housing or employment cannot be brought by a tester who did not intend to accept the job or the housing, but only made an application for the purpose of "testing" the defendant and bringing a lawsuit. *See, e.g.*, *Kyles*, 222 F.3d at 304 (tester has no standing under Article III); *Fair Emp. Council of Greater Washington, Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1271 (D.C. Cir. 1994) (tester plaintiffs lack cause of action under § 1981); *Sledge v. J.P. Stevens & Co.*, 585 F.2d 625, 641 (4th Cir. 1978) ("'tester' plaintiffs are not, of course, harmed by a refusal

to hire since they are not seriously interested in the job for which they apply"); *Parr v. Woodmen of the World Life Ins. Soc'y*, 657 F. Supp. 1022, 1032–33 (M.D. Ga. 1987) (plaintiff who had no genuine interest in employment with defendant could not make prima facie case of employment discrimination); *Allen v. Prince George's County, Md.*, 538 F. Supp. 833, 841–43 (D. Md. 1982) (same).

In this case, Plaintiff has no special statutory right being violated.  His complaint is that he is being denied a judicial position because of his political affiliation in violation of the First and Fourteenth Amendments.  If he lacks any real intent to serve as a judge and has only applied for the purpose of "testing" Article IV, Plaintiff lacks standing.  As discussed *infra*, Plaintiff has not established that he intends to serve as a judge if he were nominated.  Even on a facial challenge, the Supplemental Complaint is insufficient.  But, if the Court deems the allegations sufficient then Defendant also advances a factual challenge to Plaintiff's standing.  Plaintiff must come forward with more than mere allegations and present evidence sufficient to prove his standing.

>    1.   *The Factual Determinations Made by the Supreme Court in* Adams I *Prove that Plaintiff Did Not Intend to Serve as Judge*

The factual findings made in *Adams I* are binding upon the parties in a subsequent litigation between the same parties.  *Finstad v. Beresford Bancorporation, Inc.*, 831 F.3d 1009, 1015 (8th Cir. 2016).  In addition, those findings create the context in which standing in this action should be addressed.  Plaintiff must now make allegations or come forward with evidence sufficient to prove his intentions regarding a judgeship changed after the filing of *Adams I.*

These are the facts established in *Adams I*:

> First, the record showed that, between 2012 and 2016, during which time Adams was a practicing lawyer and a registered Democrat, Delaware's five courts had a combined total of 14 openings for which Adams, then a Democrat, would have been eligible.  Yet he did not apply for any of them.

Second, on December 31, 2015, after roughly 12 years as a lawyer for the Delaware Department of Justice, Adams retired.  In February 2016, Adams changed his bar membership from "Active" to "Emeritus" status.  He then returned to "Active" status in January 2017.  In his deposition, he stated that at about that same time in the "[b]eginning of the year, January/February," he read a law review article arguing that Delaware's judicial eligibility requirements were unconstitutional because they excluded independents.

Third, shortly thereafter, on February 13, 2017, Adams changed his political affiliation from Democrat to unaffiliated independent.  Before that, he had been a Democrat his "whole life" and actively involved in the Delaware Democratic Party. Leaving the party made it less likely that he would become a judge.  But doing so made it possible for him to vindicate his view of the law as set forth in the article.

Fourth, after Adams became a political independent on February 13, 2017, he filed this lawsuit eight days later on February 21.

Fifth, Adams said in his answer to interrogatories that he "has no knowledge of what judicial positions may become open in the next year."

Sixth, other than the act of filing the lawsuit itself, the summary judgment record contains no evidence of conversations or other actions taken by Adams suggesting that he was "able and ready" to apply for a judgeship.

*Carney*, 141 S. Ct. at 500–01 (citations omitted).  Based upon these facts, the Supreme Court

concluded that:

the context offers Adams no support.  It suggests an abstract, generalized grievance, not an actual desire to become a judge.  Indeed, Adams' failure to apply previously when he was eligible, his reading of the law review article, his change of party affiliation, and his swift subsequent filing of the complaint show a desire to vindicate his view of the law, as articulated in the article he read.

*Id.* at 501.  Nothing has changed, which is only punctuated by the fact that Plaintiff filed this action

on the same day the Supreme Court issued its Opinion finding he has no standing.

> 2.    *Plaintiff's Failure to Apply for a Superior Court Position in 2019 Proves That He Has No Real Intention to Be a Judge*

On April 10, 2019, the Third Circuit issued its final opinion affirming Plaintiff's victory

before the district court.  With the issuance of that opinion, the stay granted by the district court

terminated, and Article IV was no longer a barrier.  On April 25, 2019 a Superior Court vacancy

was announced that met all of Plaintiff's conditions for an application.  The relief that Plaintiff allegedly sought for over two years was now at hand and the opportunity for application was presented within a month of his victory.  Plaintiff did not apply.  Another Superior Court vacancy was announced on November 1, 2019 that again met all of Plaintiff's conditions for an application, and Article IV was still not in force.  Plaintiff again did not apply.  During 2019, there also were openings on the Court of Chancery in New Castle County and the Delaware Supreme Court— positions for which Plaintiff alleged in *Adams I* he would apply if freed of the constraints of Article IV, yet he did not apply for these positions either.  The only reasonable conclusion is that the Supreme Court's conclusions were and remain correct—Plaintiff has "an abstract, generalized grievance, not an actual desire to become a judge." *Carney*, 141 S. Ct. at 501.

> 3.  *Plaintiff Is Judicially Estopped From Alleging That He Was Unable to Apply for Judicial Positions Because of His Real Estate Investments*

Plaintiff alleges that he did not apply for judicial positions because he was busy with his real estate business.  Plaintiff is judicially estopped from making this argument now because it fundamentally contradicts the arguments he made to the district court, the Third Circuit and the Supreme Court in *Adams I*.

"Judicial estoppel is a judge-made doctrine that 'seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding'. . . .  In general, the doctrine is designed to prevent litigants from 'playing fast and loose with the courts' . . . .  The basic principle . . . is that absent any good explanation, a party should not be allowed to gain an advantage in litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory.'" *Jones v. Southcentral Emp. Corp.*, 488 F. Supp. 2d 475, 481 (M.D. Pa. 2007) (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4477 (1981)).

The Third Circuit has identified certain criteria for determining when seemingly inconsistent litigation stances justify application of the doctrine:

> First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. Second, judicial estoppel is unwarranted unless the party changed his or her position in bad faith – *i.e., with intent to play fast and loose with the court*. Finally, a district may not employ judicial estoppel unless it is tailored to address the harm identified and no lesser sanction would adequately remedy the damage done by the litigant's misconduct.

*In re Dex Media, Inc.*, 595 B.R. 19, 36 (D. Del. 2018) (emphasis added).

In *Adams I*, Plaintiff repeatedly testified, argued, and alleged that he was ready and able to apply for a judicial position from which he was excluded by Article IV, and was not looking for any other opportunities so he could focus on becoming a judge.  In his answering brief in opposition to Defendant's summary judgment brief filed on October 13, 2017, Plaintiff reiterated his testimony that "he 'really wanted' to become a judge; . . . that he *has not sought other opportunities to focus on a judgeship*; [and] that he would apply for any judicial position for which he feels qualifie[d]."  *Adams v. Carney*, C.A. No. 17-181-MPT, D.I. 35 at 3 (emphasis added).  Plaintiff failed to mention the real estate investment business he had started.

Likewise, in Plaintiff's answering brief before the Third Circuit, filed on August 15, 2018—during the first year of his "greatly expanded" real estate investments—Plaintiff stated "Adams seeks a judicial appointment, but the Political Balance Requirement denies him such opportunities, both as to recent judicial openings and as to opportunities that may arise in the future."  Brief for Appellee at 9, *Adams v. Carney*, No. 18-1045 (3d Cir. Aug. 15, 2018).  He further stated that "he 'really wanted' to become a judge; . . . that he has not sought other opportunities since he retired from the Delaware Department of Justice so he could focus on a judgeship; [and] that he would apply for any judicial position for which he feels qualified . . . ."  *Id.* at 8.  Plaintiff affirmatively represented he had not sought other legal employment—suggesting

that he was available for a judicial position—but again never mentioned his greatly expanding real estate business.

In his answering brief before the Supreme Court filed on February 20, 2020, Plaintiff again argued that "he would, in fact, apply for judgeships but for the political discrimination."  Brief for Respondent at 8, *Carney v. Adams*, 141 S. Ct. 493 (No. 19-309).  He clarified that he "did not state that he would merely 'consider applying.'  He said affirmatively that he 'would consider *and apply for'* any judicial position for which he feels he is qualified, which includes any judicial officer position."  *Id.* at 16 (emphasis in original).  Yet, now Plaintiff seeks to explain his failure to apply in 2019 because he alleges his real estate investments prevented him from doing so.  This explanation is flatly inconsistent with his arguments, allegations and testimony in *Adams I.*

Plaintiff's alleged reason for not applying in 2019 are not only factually inconsistent with what he told the appellate courts, it is legally inconsistent with the position he took in *Adams I.*  In *Adams I*, it was Plaintiff's burden to persuade the court that he was ready and able to be a judge.  He needed to persuade the court that such an application, at a minimum, was reasonably imminent and probable.  That burden applied not only at the outset of the litigation but also throughout the litigation.  His now professed inability to apply for a judicial position throughout 2019 is legally inconsistent with the proposition that he maintained standing throughout *Adams I.*  To allow Plaintiff now to argue that he was not able to apply for a judicial position in 2019 because of his real estate investments would be to permit him to "play fast and loose" with this Court on an issue critical to the Court's power to entertain his claim.

> 4.   *The Facts Are Indisputable That Plaintiff Only Applies for a Judicial Position When He Seeks to Manufacture Standing*

While Plaintiff's proffered explanation for his failure to apply in 2019 is both incredible and impermissible, there is a real explanation for that failure and for his April application:  Plaintiff

applies when he needs to manufacture standing by being rejected for a judicial position, but he does not apply when he is not barred by Article IV. Plaintiff is nothing but a "tester" seeking to file a lawsuit based upon his application. The facts supporting this conclusion are indisputable and the only reasonable inference that can be drawn in the overall context of this case.

*Adams I* was filed on February 21, 2017. Before it was filed, as the Supreme Court noted, Plaintiff had been a Democrat and could have applied for any of 14 judicial positions during the years 2012 to 2016. He applied for none of them. Before the district court first ruled on December 6, 2017, Plaintiff applied for a Superior Court position when his standing was actively at issue. D.I. 1 at ¶ 11 and Ex. A. Article IV remained operative at the time of his application. The district court issued its clarifying opinion on May 23, 2018. At that point, Plaintiff had obtained the judicial declaration he sought, and both Courts held he had standing to pursue the claim. On December 6, 2019 the Supreme Court accepted the appeal. However, the Supreme Court *sua sponte* asked the parties to address Plaintiff's standing when it accepted the appeal. From May 23, 2018—when the district court issued its clarified opinion holding that Plaintiff had standing—until December 6, 2019—when the Supreme Court accepted the appeal—Plaintiff did not apply for a single judicial position, even though the pathway to a number of them was not barred by Article IV for most of that time.

The pattern is indisputable. When Plaintiff is able to apply for a judicial position unconstrained by Article IV, he does not do so. When he is constrained by Article IV and his standing is at issue, he applies. This is not the conduct of someone who intends to be a Superior Court judge; it is the conduct of a "tester" who intends to be a plaintiff in a lawsuit. There is no genuine, real or actual injury here.

### C.   Plaintiff Lacks a Redressable Injury Because There Is No Realistic Possibility That He Would Ever Be Nominated as Judge

The undisputed facts of this case demonstrate that there is no realistic possibility that Plaintiff would ever be nominated to the Superior Court.  There is no injury to be redressed by judicial relief if there is no realistic possibility that Plaintiff would ever be nominated to the position at issue.  *Albuquerque Indian Rts. v. Lujan*, 930 F.2d 49, 56 (D.C. Cir. 1991); *Doherty v. Rutgers School of Law–Newark*, 651 F.2d 893, 899–900 (3d Cir. 1981) (denying standing to challenge affirmative action program where plaintiff was otherwise clearly unqualified for admission).

Here, it is indisputable that Plaintiff has no realistic prospect of being nominated to the Superior Court.  Plaintiff already has applied for three positions on the Court of Common Pleas and has not been nominated, despite there being no Article IV impediment to his nomination.  D.I. 32 at ¶¶ 16, 18.  He also applied for a position on the Superior Court in 2017.  The district court ruled during the pendency of that application, and, consequently, it was considered on the merits.  Again, he was not nominated.  Second, Plaintiff has not practiced law for at least six years.  *Id.* at ¶ 2.  Plaintiff has never alleged that he ever began practicing law again after his retirement in 2015.  There is no realistic possibility for redress of the injury Plaintiff argues he has suffered, just as there was no need for the relief he obtained in *Adams I*.

### <u>CONCLUSION</u>

Federal courts do not exercise their powers to address generalized grievances—*i.e.*, when a person simply wants a change in the law.  This is exactly such a case and should be dismissed.

Dated:  December 20, 2021

*Of Counsel*:

WILSON SONSINI GOODRICH
   & ROSATI, PC

Randy J. Holland
222 Delaware Avenue, Suite 800
Wilmington, DE 19801
(302) 304-7600

Michael W. McConnell
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300

Steffen N. Johnson
G. Edward Powell III
1700 K Street, N.W.
Washington, DC 20006
(202) 973-8800

Brian J. Levy
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
(212) 999-5800

YOUNG CONAWAY STARGATT
   & TAYLOR, LLP

/s/ *David C. McBride*
David C. McBride (No. 408)
Martin S. Lessner (No. 3109)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
dmcbride@ycst.com
mlessner@ycst.com
pkraman@ycst.com

*Attorneys for Defendant*

**<u>CERTIFICATE OF SERVICE</u>**

I, David C. McBride, hereby certify that on December 20, 2021, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> David L. Finger, Esquire
> Finger & Slanina, LLC
> One Commerce Center
> 1201 N. Orange St., 7th Floor
> Wilmington, DE  19801
> *dfinger@delawgroup.com*
>
> *Attorney for Plaintiff*

I further certify that on December 20, 2021**,** I caused the foregoing document to be served via electronic mail upon the above-listed counsel.

Dated:   December 20, 2021

> YOUNG CONAWAY STARGATT &
>  TAYLOR, LLP
>
> /s/ David C. McBride
> David C. McBride (No. 408)
> Martin S. Lessner (No. 3109)
> Pilar G. Kraman (No. 5199)
> Kevin P. Rickert (No. 6513)
> Rodney Square
> 1000 N. King Street
> Wilmington, Delaware 19801
> *dmcbride@ycst.com*
> *mlessner@ycst.com*
> *pkraman@ycst.com*
> *krickert@ycst.com*
>
> *Attorneys for Defendant,*
> *The Hon. John Carney*