IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAMES R. ADAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 20-1680-MN |
| | ) |
| THE HON. JOHN CARNEY, | ) |
| Governor of the State of Delaware, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF HIS MOTION TO DISMISS

*Of Counsel*:

WILSON SONSINI GOODRICH
   & ROSATI, PC

Randy J. Holland
222 Delaware Avenue, Suite 800
Wilmington, DE 19801
(302) 304-7600

Michael W. McConnell
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300

Steffen N. Johnson
G. Edward Powell III
1700 K Street, N.W.
Washington, DC 20006
(202) 973-8800

Brian J. Levy
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
(212) 999-5800

Dated: January 10, 2022

YOUNG CONAWAY STARGATT
   & TAYLOR, LLP

David C. McBride (No. 408)
Martin S. Lessner (No. 3109)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
dmcbride@ycst.com
mlessner@ycst.com
pkraman@ycst.com

*Attorneys for Defendant*

# TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDINGS .................................................................... 1

ARGUMENT .................................................................................................................................. 1

I.     Plaintiff's Supplemental Complaint Should Not Be Considered ............................................ 1

  A. Plaintiff's Application for a Position on the Superior Court in April 2021 Cannot Establish Standing Because It Occurred After the Filing of this Action ................................................................................... 1

  B. The Other Facts Alleged in the Supplemental Complaint, Which Occurred Before the Commencement of this Lawsuit, Do Not Establish Standing ................................................................................................ 3

II.    Plaintiff Has No Standing Even Considering His April Application ..................................... 4

  A. Plaintiff Is Collaterally Estopped by *Adams I* From Establishing Standing ........................... 4

  B. Plaintiff Has Suffered No Genuine Injury ............................................................................... 5

  C. Plaintiff Lacks a Redressable Injury Because There Is No Realistic Possibility That He Would Ever Be Nominated as Judge ....................................... 8

CONCLUSION .............................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Carnegie v. Household Int'l, Inc.*,
 376 F.3d 656 (7th Cir. 2004) ...................................................................................................8

*Carney v. Adams*,
 141 S. Ct. 493 (2020) ....................................................................................................1, 2, 8

*Cty. of Riverside v. McLaughlin*,
 500 U.S. 44 (1991) ...................................................................................................................2

*Doherty v. Rutgers School of Law-Newark*,
 651 F.2d 893 (3d Cir. 1981) ...............................................................................................9, 10

*Freedom from Religion Found., Inc. v. New Kensington-Arnold Sch. Dist.*,
 118 F. Supp. 3d 821 (W.D. Pa. 2015) .....................................................................................1

*G-I Holdings, Inc. v. Reliance Ins. Co.*,
 586 F.3d 247 (3d Cir. 2009) .....................................................................................................7

*Kyles v. J.K. Guardian Sec. Servs., Inc.*,
 222 F.3d 289 (7th Cir. 2000) ...................................................................................................6

*Laufer v. Looper*,
 C.A. No. 21-1031, 2022 WL 39072 (10th Cir. Jan. 5, 2022) ...................................................6

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992) ............................................................................................................1, 2

*Lynam v. Livingston*,
 257 F. Supp. 520 (D. Del. 1966) ..............................................................................................2

*Mathews v. Diaz*,
 426 U.S. 67 (1976) ...................................................................................................................2

*In re Navy Chaplaincy*,
 697 F.3d 1171 (D.C. Cir. 2012) ...............................................................................................4

*New Hampshire v. Maine*,
 532 U.S. 742 (2001) .................................................................................................................7

*New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*,
 101 F.3d 1492 (3d Cir. 1996) ...................................................................................................2

*Northstar Fin. Advisors Inc. v. Schwab Invs.*,
  779 F.3d 1036 (9th Cir. 2015) ...........................................................................................3

*Prasco, LLC v. Medicis Pharm. Corp.*,
  537 F.3d 1329 (Fed. Cir. 2008)..........................................................................................2

*Rockwell Int'l Corp. v. United States*,
  549 U.S. 457 (2007)............................................................................................................2

*Scahill v. D.C.*,
  909 F.3d 1177 (D.C. Cir. 2018)..........................................................................................3

*Scanlan v. Am. Airlines Grp., Inc.*,
  C.A. No. 18-4040, 2020 WL 2126782 (E.D. Pa. May 5, 2020) .................................................7

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ........................................................................................................5

*Warth v. Seldin*,
  422 U.S. 490 (1975)............................................................................................................2

*Worth v. Jackson*,
  451 F.3d 854 (D.C. Cir. 2006) ...........................................................................................4

**OTHER AUTHORITIES**

*Restatement (Second) of Judgments* § 27 (1982).............................................................................5

5B Charles Alan Wright & Arthur R. Miller, *Fed. Practice & Procedure*
  § 1350 (3d ed.) ....................................................................................................................7

## NATURE AND STAGE OF THE PROCEEDINGS

Defendant moved to dismiss Plaintiff's Supplemental Complaint on both facial and factual grounds. Defendant made this clear in both his motion to dismiss and the accompanying Opening Brief. D.I. 34; D.I. 35 at 1, 3, and 14. As noted in the Opening Brief, on a factual challenge, Plaintiff must come forward with evidence—not mere allegations—on the questions of whether he has an intention to serve as a judge and whether he has a realistic possibility of being nominated to a judicial position. D.I. 35 at 3 and 14. In response, Plaintiff entirely ignored the factual challenge, and failed to present any evidence, not even his own affidavit, on either of those questions. D.I. 37 at 17–19. Instead, Plaintiff repeatedly treats this motion as merely a facial challenge. D.I. 37 at 13, 18 and 19.

## ARGUMENT

### I. Plaintiff's Supplemental Complaint Should Not Be Considered

#### A. Plaintiff's Application for a Position on the Superior Court in April 2021 Cannot Establish Standing Because It Occurred After the Filing of this Action

Plaintiff does not expressly contest that the U.S. Supreme Court requires Article III standing to exist "as of the time he brought his lawsuit." D.I. 35 at 7 (quoting *Carney v. Adams*, 141 S. Ct. 493, 499 (2020)). Rather, Plaintiff argues that the "time of filing" rule only applies to determinations of diversity subject matter jurisdiction. D.I. 37 at 9–12. However, as Defendant explained in his Opening Brief, the Supreme Court itself applied this rule to the redressability element of Article III standing in *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 568 (1992) (D.I. 35 at 7–8). Plaintiff does not address—much less refute—the holding in *Lujan*. Nor does Plaintiff address or refute the Third Circuit's affirmance of the disallowance of post-filing evidence to establish standing in *Freedom from Religion Found., Inc. v. New Kensington-Arnold Sch. Dist.*, 118 F. Supp. 3d 821, 832 (W.D. Pa. 2015) *affirmed in relevant part* 832 F.3d 469, 476 (3d Cir.

2016). Further, Plaintiff's contention that the time of filing rule only applies to diversity jurisdiction flatly contradicts *Lujan* and applies a more lenient standard to a constitutional limitation on the Court's power than a statutory one.

In support of his argument, Plaintiff does cite to decisions allowing consideration of facts in an *amended* complaint, but amended complaints by definition add facts that occur before the original complaint was filed and are not contrary to the time of filing requirement. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473 (2007); *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 49 (1991); *Warth v. Seldin*, 422 U.S. 490, 501 (1975). Plaintiff also cites to cases that do not involve the constitutional limitations imposed by Article III. *Mathews v. Diaz*, 426 U.S. 67, 75 (1976) (pre-application requirement under 42 U.S.C. § 405(g)); *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1501 (3d Cir. 1996) (RTC dismissed from action where jurisdiction was based upon RTC being a party); *Lynam v. Livingston*, 257 F. Supp. 520, 524 (D. Del. 1966) (corporate law prerequisites to filing a derivative action);.

The cases that Plaintiff cites that do purport to allow consideration of post-filing facts to determinations of Article III standing are all distinguishable from the present case. In *Prasco, LLC v. Medicis Pharm. Corp.*, the Court stated such facts could be considered. 537 F.3d 1329, 1337 (Fed. Cir. 2008). However, the Court also stated that "[l]ater events may not create jurisdiction where none existed at the time of filing" and found that standing did not exist. *Id.* While the Court appears to have treated the "time of filing" as the time of the filing of the amended complaint, the Supreme Court has made clear that the relevant time for standing determinations is "the time [the plaintiff] brought this lawsuit," *Carney*, 141 S. Ct. at 499, or the "commencement of the suit," *Lujan*, 504 U.S. at 569–70 n.4 and 5, which is the synonymous with the time of filing the original complaint, not the time of filing some subsequent pleading. Here, standing did not exist at the

commencement of this action and post-filing action by Plaintiff cannot create it.  In *Northstar Fin. Advisors Inc. v. Schwab Invs.*, the Court allowed a supplemental complaint to cure a defect in the plaintiff's ownership of shares that arose as result of a change in the law after the initial complaint was filed.  779 F.3d 1036, 1043 (9th Cir. 2015).  In the present case, the standing flaw is more fundamental and does not arise from a change in the law post-filing.  Rather, Plaintiff's standing defect arises from his rush to file this action on the same day the Supreme Court ruled and before Plaintiff had suffered any actual or certain impending injury.  Finally, in *Scahill v. D.C.*, the court held that collateral estoppel did not preclude the plaintiff from establishing standing based upon a change in circumstances subsequent to the filing of the original complaint where the change was *caused by the defendant*, viz. the post-filing imposition of a fine on the plaintiff.  909 F.3d 1177, 1184 (D.C. Cir. 2018).  In the case at hand, the post-filing action was Plaintiff's April application— an action of Plaintiff.

While Plaintiff's cited cases are distinguishable, they also introduce a fundamental reworking of Article III—a reworking beyond the power of federal courts.  Article III is the constitutional threshold that must exist before the power of federal courts can be invoked.  By its very nature, it is not a power that can be created after-the-fact.  This Court cannot adopt a rule that gives it the power to proceed where none existed when the action was filed.  Moreover, such a rule invites the very abuse present here:  a Plaintiff who files what is at best a premature action and seeks to justify it by his own post-filing conduct.  The dissent in *Northstar* was correct (779 F.3d at 1067–69); the majority rule in *Northstar* invites the kind of abuse evident in this very case.

      **B.**      **The Other Facts Alleged in the Supplemental Complaint, Which Occurred Before the Commencement of this Lawsuit, Do Not Establish Standing**

The allegations in Plaintiff's Supplemental Complaint of pre-filing facts are insufficient to establish standing.  As set forth in Defendant's Opening Brief, Plaintiff either suffered no past

injury or any past injury was stale, and there was no certainly impending future injury. D.I. 35 at 9–10. In apparent response, Plaintiff makes two points. First, he contends that "[t]he injury is 'the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.'" D.I. 37 at 13. However, the issue on this point is not whether there is an injury to Plaintiff if he were to apply, the issue is whether such an application—at the time this action was commenced—was certainly impending. It was not. D.I. 35 at 9–10. Second, Plaintiff argues that "the 'imminency' requirement is satisfied because the discriminatory law continues to exist and will guide future appointments." D.I. 37 at 13. But the fact that Delaware's constitutional provisions will be applied in the future does not create a certainly impending injury to this Plaintiff. The cases Plaintiff cites do not hold or even suggest that imminency can be established merely because the policy or law at issue would be applied in the future. Rather both cases reiterated that the plaintiff must establish that *the plaintiff* will be imminently affected by the continuing application of the law or policy. *In re Navy Chaplaincy*, 697 F.3d 1171, 1175–76 (D.C. Cir. 2012); *Worth v. Jackson*, 451 F.3d 854, 858 (D.C. Cir. 2006).

**II.     Plaintiff Has No Standing Even Considering His April Application**

    **A.     Plaintiff Is Collaterally Estopped by *Adams I* From Establishing Standing**

In *Adams I*, Plaintiff asserted the very same claim presently being asserted here against the very same Defendant. The Supreme Court held Plaintiff lacked standing to assert that claim against this Defendant. Under well-settled collateral estoppel doctrine, Plaintiff cannot now relitigate the standing question unless he establishes a basis for doing so. D.I. 35 at 14. In addition, Plaintiff cannot now relitigate the standing issue based upon new theories or facts that could have been presented in the prior action but were not. *Id*. Plaintiff contends his April application for a position on the Superior Court is such a development that frees him to relitigate standing. D.I. 37 at 16–17. However, it was within Plaintiff's power to make and raise such an application in the

4

prior proceeding, but he chose not to do so. Instead, Plaintiff chose to file *Adams I* before ever making such an application. Second, if Plaintiff is free to raise a post-filing application on the standing question, as he now claims he is able to do, Plaintiff could have supplemented his amended complaint in *Adams I* and argued standing on the basis of such an application. He did not do so.

In sum, Plaintiff cannot relitigate an issue he lost based upon a "curative" act taken after the first action is concluded, but that could have been taken before. D.I. 35 at 11–12 (citing *Univ. of Pittsburgh v. Varian Med. Servs.*, 630 F. Supp. 2d 576, 584 (W.D. Pa. 2008), *vacated on other grounds*, 352 Fed. Appx. 437 (Fed. Cir. 2009)). While Plaintiff argues that the mere difference in timing is sufficient to allow him to relitigate the standing issue (D.I. 37 at 16–17), issue preclusion may nonetheless apply "even though the events involved in the two proceedings took place at different times . . . if the facts are sufficiently similar or identical for purposes of the applicable rule of law." *Restatement (Second) of Judgments* § 27, Reporter's Note to cmt. c (1982). The standing issues posed by an application are the same regardless of when the application occurred, and those issues could have been raised and resolved in the prior action. Here, the standing question based upon a judicial application could have been presented to each of the courts in *Adams I* but was not. Plaintiff should be precluded from doing so now.

### B. Plaintiff Has Suffered No Genuine Injury

The doctrine of standing is a constitutional limitation on the power of the federal courts to annul acts of the other branches of government or of the States. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). It is a power used only when necessary to resolve a real dispute, having a real effect on litigants before the courts. *Id.* It requires the Court to ask of a plaintiff "[w]hat's it to you?" *Id.* (quoting Scalia, The Doctrine of Standing as an Essential Element of the Separation of Powers, 17 Suffolk U. L. Rev. 881, 882 (1983)). When a plaintiff challenges the government's

5

conditions of employment, it is impossible to conclude that there is a genuine, real dispute unless one assumes or concludes that the plaintiff actually intends to accept the position if it were offered. It is admittedly a rare case in which the actual intentions of the plaintiff can be discerned. The "tester" cases cited in Defendant's Opening Brief are such cases. D.I.35 at 13–14. So too is this case.

Plaintiff responds that the holdings of the "tester" cases are limited to "when there is a federal statute protecting individual civil rights in connection with certaib [sic] benefits," but do not apply to actions alleging "violations of the Bill of Rights." D.I. 37 at 17–18. This assertion is not accurate. In a "tester" case where the court dismissed an action for lack of standing, the court expressly applied the standing requirements of Article III. *Kyles v. J.K. Guardian Sec. Servs., Inc.*, 222 F.3d 289, 304 (7th Cir. 2000) (holding employment-tester plaintiffs bringing suit pursuant to Section 1981 did not "meet the criteria that Article III imposes"). This principle was recently reaffirmed by the Tenth Circuit only last week in a case involving a "tester" where the claim was dismissed for lack of standing under Article III. *Laufer v. Looper*, C.A. No. 21-1031, 2022 WL 39072, at *9 (10th Cir. Jan. 5, 2022) (plaintiff suing a lodge for failing to provide certain information required by the ADA held to lack standing under Article III because she had no intention to stay at the lodge). Those "tester" cases finding standing under various civil rights statutes are the cases of limited application, and they do not apply here because this case does not involve any unique statutory right that is allegedly being violated.

Further, Plaintiff inaccurately argues that "Gov. Carney has not identified anything in the Supplemental Complaint that suggests that Adams' motives are not genuine, and has not offered any evidence supporting that claim." D.I. 37 at 18. In doing so, Plaintiff overlooks Defendant's substantial, and now unrebutted, evidence including: (1) the facts found by the Supreme Court

6

relating to the filing of *Adams I*; (2) the fact that Plaintiff never applied for any of fourteen judicial positions for which he was not barred during the 4 years before he filed *Adams I*; (3) the fact that Plaintiff never applied for judicial positions meeting his conditions during 2019 when the major party component was not being applied; (4) the fact that Plaintiff's current explanation for not applying for those positions in 2019 flatly contradicts the arguments he successfully made in support of standing to the district court and the Third Circuit and, unsuccessfully, to the Supreme Court in *Adams I*; and (5) the fact that Plaintiff never applied for a position on the Superior Court when he was able to be nominated, but only applies when he needs to establish standing and is unable to be nominated.  D.I. 35 at 14–19.

      This is compelling, unrebutted evidence of Plaintiff's lack of intention to serve that was presented in support of a motion to dismiss on both facial and factual grounds.  D.I. 35 at 1, 3, and 14.  "When a factual challenge is made, there is no presumption of truthfulness attached to the plaintiff's allegations, and the plaintiff bears the burden of proving the facts supporting subject matter jurisdiction by a preponderance of the evidence."  5B Charles Alan Wright & Arthur R. Miller, *Fed. Practice & Procedure* § 1350 (3d ed.) (internal citations omitted).  *See also Scanlan v. Am. Airlines Grp., Inc.*, C.A. No. 18-4040, 2020 WL 2126782, at *2 (E.D. Pa. May 5, 2020) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009)).  Plaintiff was required to respond with proof that he has standing.  He did not even come forward with his own affidavit.  Dismissal is warranted.

      Regarding judicial estoppel, Plaintiff argues that he is free to rely on his new reasons for failing to apply for a judicial position during 2019, despite arguing in *Adams I* that he was ready and able to serve during that same time, because his standing argument failed before the Supreme Court.  D.I. 37 at 15.  However, the cases cited by Plaintiff (*New Hampshire v. Maine*, 532 U.S.

742, 750-51 (2001) and *G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 262 (3d Cir. 2009)) expressly state they are not establishing an inflexible rule.  Further, a reversal on appeal does not preclude the application of judicial estoppel where Plaintiff obtained a benefit before the reversal. *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 659–60 (7th Cir. 2004).  In this case, Plaintiff successfully made standing arguments to both the district court and the Third Circuit, and he was advantaged by relief he obtained as a result.  For example, his 2017 application to the Superior Court was considered on the merits and the major party and bare majority components were not applied in 2019 when positions meeting his alleged conditions were open to him.[1]  But, whether or not Plaintiff is judicially estopped to argue this point, he does not argue it.  He offers no evidence, even by his own affidavit that he was unable to apply for the positions in 2019.

    **C.**    **Plaintiff Lacks a Redressable Injury Because There Is No Realistic Possibility That He Would Ever Be Nominated as Judge**

A second element of standing—redressability—also is lacking in this case because Plaintiff has no realistic possibility of being nominated for a judicial position.  D.I. 35 at 20.  Plaintiff insists that he has an injury that this Court may redress, stating:

> [T]he matter to be redressed in this litigation is not whether Adams will be appointed a judge.  Rather, the issue is the limitation on his ability to be considered due to a provision of the Delaware's [sic] Constitution impermissibly excluding from consideration applicants who are neither Democrats nor Republicans.

D.I. 37 at 19.  Plaintiff confuses the redressability element of standing with the injury element.

Defendant acknowledges that a plaintiff need not allege or prove that he would have obtained the benefit but for the (unlawful) barrier in order to establish an injury.  *See, e.g., Carney*,

---

[1] Further, Plaintiff inexplicably argues that these new facts "merely add new information not previously available."  D.I. 37 at 15.  It is unclear, however, how such information was "previously unavailable" when Plaintiff was solely in possession of these facts at all times during *Adams I*, having launched his real estate business around the same time he filed his first action.  D.I. 35 at 3 (citing D.I. 32 at ¶ 15).

8

141 S. Ct. at 503. Nonetheless, there is no point to judicial redress if the plaintiff has no realistic possibility of obtaining the position sought. This distinction is demonstrated in the Third Circuit's decision in *Doherty v. Rutgers School of Law-Newark*, 651 F.2d 893, 899–900 (3d Cir. 1981). The plaintiff in *Doherty* was denied admission to the Rutgers University School of Law at Newark, and he challenged the school's Minority Student Admissions Program as violating the Fourteenth Amendment. *Id.* at 895–96. The district court and the Third Circuit dismissed the complaint for lack of standing and in doing so addressed both the "injury" prong of standing and the "redressability" prong. *Id.* at 899. The Third Circuit stated: "Doherty's rejection from law school adequately satisfies the injury in fact requirement of standing, but we agree with the district court that he failed to sustain his burden of showing 'an injury to himself that is *likely to be redressed by a favorable decision.*'" *Id.* (emphasis added). The reason the admitted injury was not likely to be redressed was that there was no realistic possibility the plaintiff would be admitted to the law school even if the Minority Student Admissions Program did not exist. *Id*. The same is true here. Even assuming Plaintiff was injured by being denied the opportunity to be considered for a judgeship, that injury is not "likely to be redressed by a favorable decision" because Plaintiff has no realistic possibility of being nominated. *Id.* (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976)).

There is a second problem with Plaintiff's argument. If the injury to be redressed in this action is the opportunity to be considered for a judgeship unconstrained by the major party component, Plaintiff already obtained that redress—twice. Plaintiff applied for a position on the Superior Court before the district court ruled in *Adams I*, but that application was pending when the district court ruled. As a consequence, it was considered by the JNC on the merits. D.I. 13 at 14–15 and D.I. 20 at 14. In addition, after the Third Circuit ruled, Plaintiff had the opportunity to

9

apply for judicial positions in 2019 without the constraint of the major party component. This was his second redress, and he did not take advantage of it. Thus, not only is there no realistic possibility of his nomination, but the redress he claims to now seek already has been provided to him. The reality is that Plaintiff is not seeking redress now in order to have the opportunity to apply for a judicial position. He is seeking a ruling of this Court in order to invalidate a provision of the Delaware Constitution he finds offensive.

Finally, Plaintiff argues that there is no basis for the conclusion that he lacks a realistic possibility of being nominated and attacks the Defendant and his counsel for making the argument, suggesting a conspiracy to retaliate against Plaintiff. D.I. 37 at 18–19. Plaintiff is mistaken for two reasons. First, his record of being denied the nominations even when his applications are considered on the merits is unrefuted, and the fact that he retired from the practice of law six years ago is one reason why he was not nominated and only makes the prospect of a future nomination even more unrealistic. Indeed, Plaintiff admits in his Supplemental Complaint and Answering Brief that "he would not realistically be considered" for either the Supreme Court or the Court of Chancery (D.I. 32 at ¶ 14 and D.I. 37 at 5, respectively) and he does not provide any evidence now that it is any different for the Superior Court. Second, it is Plaintiff's burden to establish that his injury is one likely to be redressed by a decision favorable to him on the merits, and Plaintiff has offered no evidence, not even his own affidavit. An unsupported allegation will not suffice. *Doherty*, 651 F.2d at 898 (Plaintiff did not submit an affidavit or other evidence that he would have been admitted to law school if the minority program had not existed and, consequently, dismissal for lack of standing was proper).

## CONCLUSION

Plaintiff's Supplemental Complaint should be dismissed for lack of standing.

Dated: January 10, 2022

*Of Counsel*:

WILSON SONSINI GOODRICH
   & ROSATI, PC

Randy J. Holland
222 Delaware Avenue, Suite 800
Wilmington, DE 19801
(302) 304-7600

Michael W. McConnell
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300

Steffen N. Johnson
G. Edward Powell III
1700 K Street, N.W.
Washington, DC 20006
(202) 973-8800

Brian J. Levy
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
(212) 999-5800

YOUNG CONAWAY STARGATT
   & TAYLOR, LLP

/s/ *David C. McBride*
David C. McBride (No. 408)
Martin S. Lessner (No. 3109)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
dmcbride@ycst.com
mlessner@ycst.com
pkraman@ycst.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I, David C. McBride, hereby certify that on January 10, 2022, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>David L. Finger, Esquire
>Finger & Slanina, LLC
>One Commerce Center
>1201 N. Orange St., 7th Floor
>Wilmington, DE  19801
>dfinger@delawgroup.com
>
>*Attorney for Plaintiff*

I further certify that on January 10, 2022, I caused the foregoing document to be served via electronic mail upon the above-listed counsel.

Dated:  January 10, 2022

>YOUNG CONAWAY STARGATT &
> TAYLOR, LLP
>
>*/s/ David C. McBride*
>David C. McBride (No. 408)
>Martin S. Lessner (No. 3109)
>Pilar G. Kraman (No. 5199)
>Kevin P. Rickert (No. 6513)
>Rodney Square
>1000 N. King Street
>Wilmington, Delaware 19801
>dmcbride@ycst.com
>mlessner@ycst.com
>pkraman@ycst.com
>krickert@ycst.com
>
>*Attorneys for Defendant,*
>*The Hon. John Carney*