IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JAMES R. ADAMS,                           )
                                          )
                    Plaintiff,            )
                                          )
        v.                                )       C.A. No. 20-1680 (MN)
                                          )
THE HON. JOHN CARNEY,                     )
Governor of the State of Delaware,        )
                                          )
                    Defendant.            )

## <u>**MEMORANDUM OPINION**</u>

David L. Finger, FINGER & SLANINA, LLC, Wilmington, DE – Attorneys for Plaintiff

David C. McBride, Martin S. Lessner, Pilar G. Kraman, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE; Michael W. McConnell, WILSON SONSINI GOODRICH & ROSATI, PC, Palo Alto, CA; Steffen N. Johnson, G. Edward Powell III, WILSON SONSINI GOODRICH & ROSATI, PC, Washington, DC; Brian J. Levy, WILSON SONSINI GOODRICH & ROSATI, PC, New York, NY – Attorneys for Defendant

September 23, 2022
Wilmington, Delaware



NOREIKA, U.S. DISTRICT JUDGE

Presently before the Court is the motion of Defendant John Carney, Governor of the State of Delaware ("Defendant" or "Carney"), to dismiss Plaintiff John R. Adams's ("Plaintiff" or "Adams") Second Amended Complaint ("Complaint") for lack of subject matter jurisdiction. (D.I. 34).  For the reasons set forth below, Defendant's motion is DENIED.

## I.    INTRODUCTION

### A.    Background

The Delaware judiciary is composed of a half-dozen courts and related judicial agencies. *See* An Overview of the Delaware Court System, DELAWARE COURTS (last visited September 23, 2022), https://courts.delaware.gov/overview.aspx.  Article IV, § 3 of the Delaware Constitution contains two provisions that regulate the composition of certain of those courts.  The first, the "bare majority requirement," ensures that no more than a bare majority of those serving as judges on the Delaware Supreme Court, Court of Chancery, Superior Court, Family Court, and Court of Common Pleas be affiliated with a single political party.  *See* Del. Const. art. IV, § 3. The second, the "major political party" provision, which applies to the Delaware Supreme Court, Court of Chancery, and Superior Court, mandates that the remaining judges on those courts "be of the other major political party."[1]  *Id.*  So, for the three courts subject to both provisions (Supreme Court, Court of Chancery, Superior Court), no more than a bare majority of justices or judges may be from a single political party, and the remaining justices or judges must be from the other major political party.  Thus, individuals who are not affiliated with either major party (either unaffiliated[2]

---

[1]    The Delaware Constitution does not define "major political party."  *See* DEL. CONST. art. IV, § 3.

[2]    When individuals register to vote in Delaware, they are given the option to affiliate with a political party.  If they do not do so, they are registered as "No Party" and are unaffiliated.

or affiliated with a political party that is not one of the two "major" parties) are unable to obtain positions on those three courts.

Plaintiff, currently an unaffiliated voter (D.I. 32 ¶ 2), alleges that the major political party provision violates his First and Fourteenth Amendment rights by barring him from being considered for a judgeship on the Superior Court, a position for which he twice applied and was rejected.

B.     **Litigation History**

This is Plaintiff's second challenge to Article IV, § 3 of the Delaware Constitution.  In his prior suit, Plaintiff asserted that both the bare majority and major political party provisions violated his First and Fourteenth Amendment right of political association.   (C.A. No. 17-181-MPT, D.I. 10) ("*Adams I*").  At the time he filed his complaint in that case, Plaintiff had never applied to any judgeships, explaining that he felt that doing so would be futile and that he was "inhibited from applying" to a then-open vacancy "because of the announced limitation that the candidate had to be a Republican."  (*Id.* ¶¶ 6–7).  Plaintiff maintained, however, that he desired a judgeship, and sought to enjoin Delaware from using political affiliation as a criterion for the appointment of judges, and also a declaration that the bare majority requirement was unconstitutional.  (*Id.* at 11).

After discovery, which largely focused on Plaintiff's earnest desire to seek a judgeship, the parties cross-moved for summary judgment.  Plaintiff's motion centered on his argument that the bare majority and major political party requirements are unconstitutional because they condition government employment on political affiliation.  (*See* C.A. No. 17-181, D.I. 32).  Defendant's motion both argued that Delaware's appointment scheme is constitutional and that Plaintiff lacked standing.  (*See* C.A. No. 17–181, D.I. 29).  Defendant pointed out that Plaintiff had not applied for

_____

*See Voter Registration*, STATE OF DELAWARE (last visited September 23, 2022), https://elections.delaware.gov/voter/votereg.shtml

a judgeship since 2009 and had no concrete plan to apply for or obtain a judgeship.  (*Id.* at 13).

Further, Defendant explained that Plaintiff had been a Democrat his whole life, but changed his

political affiliation to unaffiliated just ten days before filing suit.  (*Id.* at 17–18).  Plaintiff had also

changed his bar status from "emeritus" to "active" shortly before filing suit.  Thus, Defendant

argued that Plaintiff had no concrete interest in obtaining a judgeship and therefore lacked standing

to bring his complaint.

The district court granted Plaintiff's motion for summary judgment and denied

Defendant's.  *Adams v. Carney*, C.A. No. 17-181-MPT, 2018 WL 2411219 (D. Del. May 23,

2018), clarifying *Adams v. Carney*, C.A. No. 17-181-MPT, 2017 WL 6033650 (D. Del. Dec. 6,

2017).  The district court found that Adams had constitutional standing to challenge the major

political party provision despite never having applied because Plaintiff's application would have

been futile in light of his political (un)affiliation.  *See id.* at *4.  The district court credited Adams's

assertion that he would apply for a judgeship on the Delaware Superior or Supreme Court should

he be permitted to do so without first having to affiliate with a political party, and therefore found

his injury to be concrete.  *See id.*  Although the district court did not find that Plaintiff had

constitutional standing to challenge the "bare majority" requirement, it found that Adams had

"prudential standing to challenge, on First Amendment grounds, the entirety of Article IV, § 3 of

the Constitution of the State of Delaware."  *Id.* at *6.  The district court then held that § 3 violated

the First Amendment.  *Id.* at *8.  Defendant appealed (C.A. No. 17-181-MPT, D.I. 50) and moved

to stay the summary judgment order (C.A. No. 17-181-MPT, D.I. 63), which the district court did.

(C.A. No. 17-181-MPT, D.I. 69).

The Third Circuit affirmed the district court's order in part. *Adams v. Governor of Del.*, 922 F.3d 166 (3d Cir. 2019).[3]  The panel agreed that Adams had standing to challenge the major political party provision but not the bare majority requirement. *Id.* at 174–75.  The panel found that the district court erred by hearing a challenge to the entirety of § 3 despite finding that Adams lacked standing to challenge the bare majority requirement. *Id.* at 175.  Consequently, the Third Circuit reversed the part of the summary judgment order that pertained to the Family Court and Court of Common Pleas. *Id.*  Upon reaching the merits of Adams's challenge to the major political party requirement, the Third Circuit determined § 3 to be unconstitutional and inseverable from the bare majority provision. *Id.* at 176-84.  Defendant petitioned for a writ of certiorari, which the Supreme Court granted.[4]

The Supreme Court unanimously reversed the Third Circuit on standing grounds and vacated the underlying judgment. *Carney v. Adams*, 141 S. Ct. 493 (2020).  The Supreme Court determined that Adams had not demonstrated that he suffered from an injury-in-fact because he had not shown that he was "able and ready to apply for a judgeship in the reasonably foreseeable future." *Id.* at 501.  The Supreme Court rested its holding on three considerations.  First, the Supreme Court noted that Adams's stated intent to apply if permitted to do so was not corroborated by evidence, as the record was devoid of evidence of any past injury, prior applications or other indication that Adams was prepared to apply for a judgeship in the future. *Id.*  Second, the Court

---

[3]     The Third Circuit first published a ruling on Defendant's appeal on February 5, 2019. 914 F.3d 827 (3d Cir. 2019).  On April 10, 2019, the Third Circuit vacated that ruling and granted a rehearing.  920 F.3d 878 (3d Cir. 2019).  That same day, the Third Circuit published the cited ruling.

[4]     In granting the petition, the Supreme Court "asked that the parties first address the question whether Adams has demonstrated Article III standing to bring this lawsuit." *Carney v. Adams*, 141 S. Ct. 493, 498 (2020).

noted that the context suggested "an abstract, generalized grievance, not an actual desire to become a judge" because Adams admitted to having read a law review article challenging the constitutionality of the major political party provision and then calling the article's author and telling him that he would "like to pursue" the question by filing suit.  The Supreme Court noted that shortly thereafter, Adams switched his party affiliation to "unaffiliated" and his bar membership status from "emeritus" to "active," both of which were necessary for Adams to bring his challenge.  *Id.* at 500-01.  Third, the Supreme Court reasoned that finding that Adams had standing "would significantly weaken the longstanding legal doctrine preventing this Court from providing advisory opinions at the request of one who, without other concrete injury, believes that the government is not following the law."  *Id.* at 501.  Finding that the evidence failed to demonstrate that Adams was "able and ready" to apply for a judgeship, the Supreme Court held that Adams had no standing to pursue the claim and did not proceed to the merits of his challenge.

C.    **The Present Dispute**

Plaintiff filed the present lawsuit (D.I 1) on the day the Supreme Court issued its opinion.  He has since filed an amended complaint and a supplemental complaint.  (D.I. 15, 32).  As in *Adams I*, Plaintiff's lawsuit asserts that Delaware's method of nominating judges violates his constitutional rights.  Specifically, he contends that the major political party provision violates his First and Fourteenth Amendment rights by denying him the ability to obtain a judgeship because of his political (un)affiliation.  (D.I. 32 ¶¶ 21-31).

Plaintiff's Amended Complaint details Adams's preparation and readiness to apply for a judgeship.  First, Adams alleges that he contacted the State of Delaware Office of Pensions to inquire about how his pension would be impacted by being appointed to a judgeship.  (D.I. 15 ¶ 6).  Second, Adams alleges that he developed a plan in his search for a judgeship that involves focusing on positions for which he will be "realistically considered."  (*Id.* ¶ 14).  As such, he asserted that

it is his intention to apply only for Superior Court and Court of Common Pleas vacancies in New Castle County where a sitting judge is not seeking reappointment. (*Id.*). Finally, Adams alleges that he applied for a Superior Court position in 2017 and Court of Common Pleas positions in 2018, 2020, and 2021. (*Id.* at 6 n.1, ¶¶ 16, 18). Adams's 2017, 2018, and 2020 applications were rejected, and at the time he filed his Amended Complaint, he had not received a response to his 2021 application. (*Id.*).

Defendant moved to dismiss the Amended Complaint on the grounds that Plaintiff lacked standing. (D.I. 19). The Court held a hearing on the motion (D.I. 27), and during the hearing Plaintiff requested leave to file a supplemental complaint to demonstrate that he has applied to an additional judgeship since commencing his lawsuit. (*Id.* at 17:8–18). The Court permitted Adams to file a supplemental complaint. (D.I. 31).

Shortly thereafter, Plaintiff filed his Supplemental Complaint.[5] (D.I. 32). The Supplemental Complaint maintains the allegations of the Amended Complaint and adds two factual allegations. First, it alleges that Adams had been rejected from the Court of Common Pleas position that he applied for in 2021. (*Id.* ¶ 18). Second, it discloses that Adams applied to a vacancy in the Superior Court, and had also been rejected from that position. (Id. ¶ 19).

Defendant moved to dismiss Plaintiff's Supplemental Complaint for lack of subject matter jurisdiction. (D.I. 34). Defendant maintains his position that Plaintiff lacks standing. Defendant further asserts that Plaintiff is collaterally estopped from establishing standing, that Defendant is

---

[5]     Plaintiff titled the Complaint a "Second Amended Complaint." Because it alleges facts that occurred after the commencement of this action, however, the Court refers to it as a supplemental complaint. *See* Fed. R. Civ. P. 15(d) ("On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.").

not genuinely injured, and that his alleged injury is not redressable.  (*See* D.I. 35, 38).[6]  Plaintiff submitted a brief opposing Defendant's motion that asserts Plaintiff has a genuine interest in becoming a judge as evidenced by the many applications he has submitted to Delaware's state courts.  (D.I. 37).

## II.   <u>LEGAL STANDARDS</u>

A motion to dismiss a complaint for lack of standing is properly brought as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  *See Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).  A party moving under Rule 12(b)(1) may either bring a facial challenge, asserting that the facts as alleged in the complaint do not establish standing, or a factual challenge, disputing the complaint's jurisdictional facts.  *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

Defendant's motion brings a factual challenge to Plaintiff's standing.[7]  "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – . . . the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  Courts

---

[6]     In his opening brief, Defendant sought leave to take discovery on the question of standing. (D.I. 35 at 3).  The Court granted Defendant's request to take limited discovery on standing. (D.I. 40).  The parties, however, ultimately declined to take any discovery.  (D.I. 41).

[7]     Defendant stated that he "moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) on facial grounds and, if needed, on factual grounds." (D.I. 35 at 1).  Defendant, however, submitted a signed declaration controverting Plaintiff's allegation that he is genuinely interested in obtaining a judgeship. (D.I. 36).  Indeed, the thrust of Defendant's motion is that Plaintiff is not sincerely interested in becoming a judge and that the steps he has taken (developing a plan, submitting applications) are merely attempts to manufacture standing.  Because Defendant is attacking the factual allegations underlying Plaintiff's complaint rather than taking them as true and arguing that those facts do not establish Plaintiff's standing, Defendant's motion is understood as bringing a factual challenge.

considering a factual challenge will not presume that the plaintiff's allegations are truthful, and the plaintiff bears the burden of proving that the court has jurisdiction to hear his complaint.  *See id.*

### III.    <u>DISCUSSION</u>

Federal courts are courts of limited jurisdiction and possess only the power authorized by the United States Constitution and federal statutes.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).  Article III of the Constitution extends the judicial power to an enumerated set of "Cases" and "Controversies."  U.S. CONST. art. III, § 2.  By defining the power of the federal courts, Article III situates the federal courts within the "'tripartite allocation of power' set forth in the Constitution."  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 474 (1982)).  Indeed, it has been remarked that "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  *Raines v. Byrd*, 521 U.S. 811, 818 (1997).

The standing doctrine operates to ensure that federal courts do not exceed the bounds of their authority.  *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).  To have standing, plaintiffs must establish three things:

> First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'"  Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."  Third, it must be "likely," as opposed to

> merely "speculative," that the injury will be "redressed by a
> favorable decision."

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  The main dispute between the parties here is

whether Adams has suffered an injury in fact (D.I. 35 at 12-19), although Defendant offers a short

argument that Adams injury is not redressable (D.I. 35 at 20).  Before tackling those disputes,

however, the Court will address Defendant's contention that collateral estoppel precludes Plaintiff

from establishing standing as well as the parties' dispute about what is properly in the factual

record.

### A.    Collateral Estoppel

Defendant argues that Plaintiff is collaterally estopped from establishing standing in this

case because the Supreme Court determined that based on the facts alleged in *Adams I* Plaintiff

did not have standing.  "The doctrine of collateral estoppel prevents the relitigation of issues that

have been decided in a previous action."  *Hawksbill Sea Turtle v. Fed. Emer. Mgmt. Agency*,

126 F.3d 461, 474 (3d Cir. 1997).  To apply collateral estoppel, four elements must be present:

"(1) the previous determination was necessary to the decision; (2) the identical issue was

previously litigated; (3) the issue was actually decided in a decision that was final, valid, and on

the merits; and (4) the party being precluded from relitigating the issue was adequately represented

in the previous action."  *Id.* at 475.

Collateral estoppel promotes judicial economy and finality by precluding a party from

rehashing old issues.  Accordingly, "[i]t is well settled that changed factual circumstances can

operate to preclude the application of collateral estoppel."  *Scooper Dooper, Inc. v. Kraftco Corp.*,

494 F.2d 840, 846 (3d Cir. 1974); *see also Raytech Corp. v. White*, 54 F.3d 187, 190 (3d Cir. 1995)

(citing *Montana v. United States*, 440 U.S. 147 (1979) ("The Supreme Court has also recognized

[] that collateral estoppel is inappropriate if facts essential to the earlier litigated issue have

changed.")).  This is so because when material facts are altered, a party cannot submit an identical issue.  *See EEOC v. American Airlines*, 48 F.3d 164, 168 (5th Cir.1995) ("To produce absolution from collateral estoppel on the ground of changed factual circumstances, the changes must be of a character and degree as might place before the court an issue different in some respect from the one decided in the initial case."); *see also Scooper Dooper*, 494 F.2d at 896 (explaining that "where the changed circumstances are not material, and therefore do not amount to controlling facts, collateral estoppel remains applicable.")

In *Hawksbill*, plaintiffs filed a second suit to enjoin the construction of a temporary housing project in the U.S. Virgin Islands under the Endangered Species Act.  In Plaintiffs' first suit, their motion to enjoin was denied by Judge Finch, who reasoned that the project's mitigation efforts were adequate because there was no evidence that Tree Boas inhabited the project site.  In the second action, plaintiffs presented new and robust evidence that Tree Boas did in fact occupy the area in and around the project site.  *Id.* at 469.  Despite these changed facts, Judge Brotman, the judge in the second action, treated Judge Finch's findings as conclusive and denied plaintiffs' request for preliminary injunctive relief.  The Third Circuit reversed, holding that Judge Brotman erred in treating Judge Finch's findings as conclusive because "when significant new facts grow out of a continuing course of conduct, the issues in a successive suit may fail to constitute the same 'issue' so as to merit preclusive effect."  *Id.* at 477.  In other words, the new evidence demonstrating that the Tree Boa was present at the project site substantially altered the question about whether defendants' mitigation efforts were sufficient, and, as a result, it was inappropriate for Judge Brotman to give Judge Finch's findings preclusive effect.

Similarly, the Court will not apply collateral estoppel here because new facts render the issue of standing fundamentally different than the issue the Supreme Court decided in the parties'

previous dispute.  In *Adams I*, the Supreme Court, commenting that "[t]his is a highly fact-specific case," determined that Adams was not "able and ready" to apply after noting that, among other things, Adams had not applied to and was not prepared to apply for a judgeship.  *Carney*, 141 S. Ct. at 501.  The same cannot be said now, where the record evidence demonstrates that Plaintiff has applied to multiple judgeships and has developed a plan to apply to future judgeships. Accordingly, the Court's inquiry requires analysis of material facts that were missing from *Adams I*, and the parties will not be relitigating the identical issue previously decided.

### B.    The Scope of the Factual Record

The Supplemental Complaint asserts that in March of 2021, after his initial complaint was filed in this case, Adams applied to a Superior Court vacancy.  (*See* D.I. 32 ¶ 19).  Defendant contends that standing is determined at the time Plaintiff filed his original complaint, and the Court may not consider Adam's later application in its standing analysis.  (D.I. 35 at 7-10).  In addition, Plaintiff's Amended Complaint and his Supplemental Complaint allege that he did not apply to certain vacant judgeships in 2018 and 2019 because he was busy with real estate projects.  (D.I. 15 ¶ 15, D.I. 32 ¶ 15).  Defendant contends that this assertion is inconsistent with representations that Plaintiff made in *Adams I*, and that Plaintiff should be judicially estopped from making it now. (D.I. 35 at 16-18).  The Court will address these arguments in turn.

### 1.    Consideration of the Supplemental Complaint's New Assertions

Plaintiff's Supplemental Complaint asserts that he has applied to five judgeships. Plaintiff's Amended Complaint included four of these applications: to the Superior Court in 2017 (D.I. 15 at 6 n.1) and to the Court of Common Pleas in 2018, 2020, and 2021.  (*Id.* at 6 n.1, ¶¶ 16, 18).  Plaintiff's Supplemental Complaint further asserts that he applied to a vacancy on the Superior Court in March of 2021.  (D.I. 32 ¶ 19).  Defendant argues that the standing inquiry

focuses on Plaintiff's standing at the time he filed suit (*i.e.* December of 2020) and, thus, the Court must disregard the later application for its standing analysis.

Rule 15(d) of the Federal Rules of Civil Procedure gives license to "permit supplementation even though the original pleading is defective in stating a claim or defense." The weight of authority holds that Rule 15(d) permits new allegations in a supplemental complaint to cure standing defects.[8] Indeed, a plurality of circuit courts permit supplemental pleadings to cure standing defects, while a minority of circuit courts do not.[9] Although the Third Circuit has yet to address the question squarely, there is some suggestion that it will join the plurality of courts of appeals. In *Korb v. Hastings*, a unanimous Third Circuit panel stated in a footnote that "[a] supplemental pleading may cure jurisdictional defects." 860 Fed. App'x 222, 226 n.5 (3d Cir. 2021) (citing *Mathews v. Diaz*, 426 U.S. 67, 75 (1976)). So too, in *T-Mobile Northeast LLC v. City of Wilmington, Del.*, the Third Circuit permitted a plaintiff's supplemental complaint to relate back and cure the initial complaint's ripeness defect.[10] 913 F.3d 311, 318 (3d Cir. 2019). Just

---

[8]     By considering the question of whether a supplemental pleading may cure a standing defect, the Court does not mean to suggest that the initial or amended complaints in this case are defective. Rather, the Court is simply considering whether it may consider facts that arose after the initial complaint in its standing analysis.

[9]     The First, Second, Fourth, Ninth, D.C. and Federal Circuits permit supplemental pleadings to cure standing defects. *See Scahill v. District of Columbia*, 909 F.3d 1177 (D.C. Cir. 2018); *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1044 (9th Cir. 2015); *United States ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 6 (1st Cir. 2015); *Daniels v. Arcade, L.P.*, 477 F. App'x 125, 131 (4th Cir. 2012); *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1337 (Fed. Cir. 2008); *Travelers Ins. Co. v. 633 Third Assocs.*, 973 F.2d 82, 88 (2d Cir. 1992). The Seventh, Eighth and Tenth Circuits do not. *See S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013); *Pollack v. U.S. Dep't of Justice*, 577 F.3d 736, 742 n.2 (7th Cir. 2009); *Park v. Forest Serv.*, 205 F.3d 1034, 1037–38 (8th Cir. 2000).

[10]    The ripeness defect in *T-Mobile Northeast LLC* was non-jurisdictional, *see id.* at 323–26, and the Court stated that it was not reaching the issue of whether a supplemental pleading could cure a pleading over which the Court lacked jurisdiction. *Id.* at 323 n.15.

nine months later, in *Garrett v. Wexford Health*, the Third Circuit followed *T-Mobile* and permitted a prisoner to supplement his complaint to cure an exhaustion defect.  938 F.3d 69 (3d Cir. 2019).  In *Garrett*, the panel quoted *Mathews v. Diaz*, 426 U.S. 67, 75 (1976), for the proposition that a plaintiff who satisfies a nonwaivable condition of jurisdiction after filing suit may file a supplemental complaint in the district court to eliminate the jurisdictional problem.  *Garrett*, 938 F.3d at 83.  At least one other district court in the Third Circuit has expressed that "supplementation may allow a plaintiff to add newly arisen facts that, *e.g.*, cure jurisdictional defects."  *Przywieczerski v. Blinken*, No. 20-02098, 2021 WL 2385822 at *2 (D.N.J. June 10, 2021).[11]

The Court agrees with the weight of authority.  Permitting a supplemental pleading to cure a jurisdictional defect serves to ensure that federal courts fulfill their constitutionally assigned function to decide cases and controversies.  *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 SUFFOLK U. L. REV. 881, 882 (1983).[12]  Accordingly, the Court will determine whether Plaintiff has standing by considering all of his applications, including the March 2021 application for the Superior Court.

### 2.    Consideration of Plaintiff's Allegation that He Did Not Apply to Certain Vacancies Because He Was Busy With His Real Estate Business

The parties dispute whether the Court should consider Plaintiff's allegation that he did not apply to two Superior Court judgeships that opened in New Castle County in 2019 because "[t]he timing . . . was bad for Adams" because of his involvement in real estate ventures.  (D.I. 35 at 15).

---

[11]    Wright & Miller also supports that jurisdictional defects may be cured by a supplemental pleading.  *See* 6A Wright & Miller, *Federal Practice and Procedure* § 1507 (3d ed.) (explaining that "a lack of subject-matter jurisdiction should be treated like any other defect for purposes of defining the proper scope of supplemental pleading.").

[12]    Similarly, 28 U.S.C. § 1653 states that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."

Defendant argues that Plaintiff is judicially estopped from offering this explanation because, in the parties' previous litigation, Plaintiff represented that he "has not sought other opportunities to focus on a judgeship" and "would apply for any judicial position for which he feels qualifie[d]." (D.I. 35 at 17–18 (citing Plaintiff's statements in various briefs)). Plaintiff responds that Defendant has not established that judicial estoppel applies because Defendant has not shown that the positions he has taken are irreconcilably inconsistent, adopted in bad faith or that judicial estoppel is necessary to preserve the court's integrity. (D.I. 37 at 14–16).

Judicial estoppel is a fact-specific, equitable remedy. *In re Kane*, 628 F.3d 631, 637 (3d Cir. 2010). Judicial estoppel may be imposed only if:

> (1) the party to be estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted in a prior proceeding; (2) the party changed his or her position in bad faith, i.e., in a culpable manner threatening to the court's authority or integrity; and (3) the use of judicial estoppel is tailored to address the affront to the court's authority or integrity.

*Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 777-78 (3d Cir. 2001). The doctrine is to be invoked sparingly, as it is not intended to eliminate all inconsistencies, but instead is "appropriate when the inconsistent positions are tantamount to a knowing misrepresentation to or even a fraud on the court." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 319, 324 (3d Cir. 2003).

Here, the prerequisites for judicial estoppel have not been met. First, it is not clear that the positions that Adams has taken are irreconcilably inconsistent. Defendant makes much of Plaintiff's statement "that he has not sought other opportunities to focus on a judgeship." Plaintiff's statement, made in a deposition (C.A. No. 17-181-MPT, D.I. 30 at 4:13–6:18), however, is not irreconcilably inconsistent with his assertion that he later became busy with real estate. Moreover, as Defendant recognizes, Plaintiff's statement seems to refer to *legal* opportunities.

14

(*See* D.I. 35 at 17-18) (acknowledging that "Plaintiff affirmatively represented he had not sought other *legal employment . . .*") (emphasis added).  At his deposition, Plaintiff explained that he had changed his bar status from "emeritus" to "active" and was focused on obtaining a judgeship. (C.A. No. 17-181-MPT, D.I. 30 at 4:13–6:18).  Nowhere in that deposition or elsewhere did Plaintiff represent that he would focus on a judgeship and not pursue any other way of making money.  Accordingly, the Court cannot find that Plaintiff took an irreconcilably inconsistent position, let alone one that is indicative of culpable conduct vis-à-vis the court.  *See Montrose Med. Grp. Participating Sav. Plan*, 243 F.3d at 781 (explaining that a litigant acts in "bad faith" for judicial estoppel purposes only if he behaves in a matter that is somehow culpable vis-à-vis the court).  Therefore, the Court will consider Plaintiff's assertion – which Defendant chose not to test in discovery (D.I. 41) – that he did not apply to certain judgeships in 2019 because of his business ventures.

### C.      **The Record Demonstrates that Plaintiff Has Standing**

Defendant offers two arguments that Plaintiff lacks standing.  First, he argues that Plaintiff has suffered no genuine injury.  Second, Defendant insists that, even if Plaintiff has suffered an injury, it is not one that is redressable.  The Court addresses each argument in turn.

### 1.      **Plaintiff Has Shown He Is Injured by the Major Political Party Provision**

Defendant contends that Plaintiff is not injured by the major political party provision because he lacks any genuine interest in being a judge.  Defendant insists rather that Plaintiff is feigning his interest and applying to positions only to manufacture standing so that he can bring this case.  (D.I. 35 at 9-16).  Defendant believes that the Supreme Court's factual determinations in *Adams I* are binding and "create the context in which standing in this action should be

addressed." (D.I. 35 at 14). Viewing the record through the proper prism, Defendant insists that the major political party provision causes Plaintiff no genuine injury.

Defendant argues that the factual findings made in *Adams I* are binding upon the parties in this subsequent litigation between the same parties. Defendant then excerpts certain facts found by the Supreme Court:

> First, the record showed that, between 2012 and 2016, during which time Adams was a practicing lawyer and a registered Democrat, Delaware's five courts had a combined total of 14 openings for which Adams, then a Democrat, would have been eligible. Yet he did not apply for any of them . . .

> Second, on December 31, 2015, after roughly 12 years as a lawyer for the Delaware Department of Justice, Adams retired. In February 2016, Adams changed his bar membership from "Active" to "Emeritus" status. He then returned to "Active" status in January 2017. In his deposition, he stated that at about that same time in the "[b]eginning of the year, January/February," he read a law review article arguing that Delaware's judicial eligibility requirements were unconstitutional because they excluded independents . . .

> Third, shortly thereafter, on February 13, 2017, Adams changed his political affiliation from Democrat to unaffiliated independent. Before that, he had been a Democrat his "whole life" and actively involved in the Delaware Democratic Party. Leaving the party made it less likely that he would become a judge. But doing so made it possible for him to vindicate his view of the law as set forth in the article.

> Fourth, after Adams became a political independent on February 13, 2017, he filed this lawsuit eight days later on February 21.

> Fifth, Adams said in his answer to interrogatories that he "has no knowledge of what judicial positions may become open in the next year."

> Sixth, other than the act of filing the lawsuit itself, the summary judgment record contains no evidence of conversations or other actions taken by Adams suggesting that he was "able and ready" to apply for a judgeship.

16

(D.I. 35 at 14-15 (quoting *Carney v. Adams*, 141 S. Ct. at 500–01 (2018))).  Defendant argues that the Supreme Court's findings and later conclusion that Adams had an "abstract, generalized grievance" should "create the context in which this action should be addressed."  (D.I. 35 at 14-15).  Defendant submits that this is so because "nothing has changed" since the Supreme Court issued its opinion in *Adams* I.  (*Id.* at 15).

In this Court's view, Defendant stretches the Supreme Court's findings in *Adams I* too far. The Supreme Court's conclusion reflected the record before it and did not, as Defendant seems to suggest, indelibly taint Plaintiff as a man who can never have a genuine interest in obtaining a judgeship.  The record in *Adams I* indicated that Adams had nothing more than an abstract, generalized grievance.  But the record before this Court is different, and it demonstrates that Adams's interest in a judgeship has matured into something concrete and genuine.

Between 2017 and 2021, Plaintiff has applied to five judgeships, and there is no evidence that he does not intend to continue applying for judgeships in the future.  Plaintiff's Amended Complaint details four applications and since this litigation has begun, Plaintiff applied for an additional judgeship.  Although judgeships are limited, and vacancies do not arise in a predictable manner, the record therefore suggests that when a vacancy that fits Plaintiff's plan arises, Plaintiff will apply for that position.

Because Plaintiff is seeking prospective relief, he must show that he is "likely to suffer future injury" from Defendant's conduct to establish standing.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983); *McNair v. Synapse Group Inc.*, 672 F.3d 213 (3d Cir. 2012).  To show that he is "likely to suffer injury" from the major political party provision, Plaintiff must show that he is "able and ready" to apply for a judgeship to which the provision applies in the future. *See Carney v. Adams*, 141 S.Ct. 493, 500 (2020).  In the Court's view, Plaintiff's applications to

judgeships demonstrates that Plaintiff is "able and ready" to apply for vacant judgeships that fit his plan should such an opportunity arise.

Defendant appears to recognize that Plaintiff has shown that he is "able and ready" to apply but urges the Court to dismiss this evidence as being an attempt to manufacture standing. In other words, Defendant accuses Plaintiff of applying only in an effort to dress up his generalized, abstract grievance with Delaware's scheme for staffing judges. (D.I. 35 at 18-19). Defendant insists that Plaintiff is merely a "tester" who wants only to be a plaintiff in a lawsuit, not a judge. (D.I. 35 at 19). Yet all that Defendant submits as evidence for this proposition is that Plaintiff did not apply for four judicial vacancies. Two of those vacancies were for judgeships in Sussex County – and inconsistent with Plaintiff's professed "plan" – and the other two vacancies occurred in 2019, a time when Plaintiff avers he was tied up with his small business. (*See* D.I. 32 ¶ 15). The Court cannot conclude on this alone that Plaintiff's repeated applications for open judicial vacancies are insincere.

Ultimately, the record before the Court suggests that Plaintiff's interest in becoming a judge has developed into something tangible and sincere. As a politically unaffiliated voter interested in becoming a judge, Plaintiff is barred from certain judgeships by virtue of the major political party provision and he is, therefore, injured by that provision.

## 2. <u>Plaintiff's Injury Is Redressable</u>

Defendant argues that even if Plaintiff were injured by the major political party provision, that injury is not redressable because there is no realistic possibility that he would ever be selected for a judgeship. (D.I. 35 at 20). Defendant argues that the fact that Plaintiff's applications have been repeatedly rejected after consideration on the merits and his time away from practicing law show that it is not realistic that he will ever be selected for a judgeship. Asserting that there is no

realistic possibility that Plaintiff will be nominated, Defendant asserts that Plaintiff lacks standing to challenge the major political party provision.

Plaintiff, of course, disagrees.  Plaintiff points out that he satisfies the formal prerequisites for being a judge in Delaware, as Article IV, § 2 of the Delaware Constitution requires only that state judges "be citizens of the State and learned in the law," and there is no dispute that Plaintiff is a citizen of Delaware who is an active member of the Delaware Bar.  (D.I. 37 at 18-19).  Given this, Plaintiff challenges Defendant's assertion that Adams has no realistic possibility of obtaining a judgment as either "(1) a disturbing admission that the Judicial Nominating Commission and/or Gov. Carney have pre-determined . . . that his application will never be considered, or (2) nothing but rank speculation."  *Id.*  More fundamentally, Plaintiff suggests that the injury to be redressed is not that he is not being selected for judgeships, but instead that his applications to certain positions are not being considered solely on the grounds that he is politically unaffiliated.

"For an injury to be redressable, the plaintiff must show that it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Shalom Pentecostal Church v. Acting Sec'y U.S. Dep't of Homeland Sec.*, 783 F.3d 156, 161-62 (3d Cir. 2015). However, "[w]hen the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing.  The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993).  This principle accords with *Regents of the University of California v. Bakke*, which involved a challenge to a school's admissions plan that reserved a

specific number of seats for minority applicants.  438 U.S. 265 (1978).  In *Bakke*, the Court dismissed the notion that the Plaintiff lacked standing because he did not show that he would be admitted even if he were able to compete for every seat, because the plaintiff's injury was that he could not compete for every seat.  *See id.* at 278 n.14.  Here, Plaintiff alleges that he is injured because he cannot compete for judgeships solely because he is politically unaffiliated.  Like the asserted injuries in *Bakke* and *Ne. Fla. Chapter of Associated Gen. Contractors of Am.*, Plaintiff's injury can be redressed by a favorable court decision whether or not Plaintiff ultimately obtains a judgeship.  The injury is that he is excluded from being considered for a judgeship and that exclusion from consideration is remediable.[13]

## IV.   CONCLUSION

For the above reasons, the Court finds that Plaintiff has standing to challenge the major political party provision and, therefore, denies Defendant's motion to dismiss.  An appropriate order will follow.

---

[13]     Even assuming that Plaintiff must show that he has a realistic possibility of being nominated to have standing, the Court cannot conclude that Defendant has no realistic possibility of being nominated.  Plaintiff meets the formal qualifications for being nominated to a judgeship: he is a citizen of Delaware who is a member of the Delaware bar.  That he has previously had his applications denied does not foreclose eventual success.  Delaware judgeships are likely competitive and many qualified applicants will likely be passed over.  Similarly, that he has spent time away from the practice of law is not a clear death knell for his chances.  There is no evidence before the Court that the state exclusively chooses applicants who are currently practicing law.  Nor do the job postings in the record mention a preference for candidates who are actively practicing law.